Veronica Arechederra Hall, Bar No. 5855
veronica.hall@jacksonlewis.com
Steven C. Anderson, Bar No. 11901
steven.anderson@jacksonlewis.com
**JACKSON LEWIS P.C.**
3800 Howard Hughes Pkwy, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JASON KINZER, an individual, | Case No. 2:15-cv-2306-JAD-PAL |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS** |
| ALLEGIANT AIR, LLC, a Nevada limited liability company; and ALLEGIANT TRAVEL CO. a Nevada corporation, | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Allegiant Air, LLC and Allegiant Travel Co. ("Defendants") move the Court for dismissal of Plaintiff Jason Kinzer's ("Plaintiff") Complaint. Plaintiff's claims are preempted by federal law and otherwise fail to state claims on which relief may granted. In addition, Allegiant Travel Co. should be dismissed because it is not a proper party to this action.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

This motion is based on the following memorandum of points and authorities, the papers and pleadings on file with the Court and any oral argument the Court may consider.[1]

Dated: December 16, 2015.

JACKSON LEWIS P.C.

_____/s/ Steven C. Anderson_____
Veronica Arechederra Hall, Bar No. 5855
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendants*

## I.   **INTRODUCTION**

Plaintiff was separated from his employment with Allegiant Air, LLC ("Allegiant") on or about July 23, 2015.  Plaintiff, who was an at-will employee, was terminated because he failed to meet the high standards of care and professionalism required by Allegiant and the aviation safety regulations promulgated under the Federal Aviation Act ("FAA").  Approximately four months after his separation, Plaintiff filed the instant action.  Plaintiff alleges he was retaliated against and terminated for complying with federal aviation law, and resisting Allegiant's "unlawful protocols."  *Specifically, Plaintiff alleges he was terminated for placing his command responsibility for safety (mandated by federal law) above company profits.*  While Allegiant denies Plaintiff's inaccurate and self-serving recitation of events, that is not material to this Motion.  This is because Plaintiff asserts state law claims that are preempted by federal law and must be dismissed.

Through the FAA, Congress established the Federal Aviation Administration (the "Administration").  At Congress' direction, the Administration has issued pervasive aviation safety regulations.  Through these statutes and regulations, Congress has impliedly preempted the

---

[1]   Nevada district courts agree with the majority of courts interpreting FRCP 12(a)(4), which have held that "filing a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion."  *See Gamble v. Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 44561 (D. Nev. Mar. 31, 2014) (internal citations omitted); *Talbot v. Sentinel Ins. Co., LTD.*, 2012 U.S. Dist. LEXIS 43340 (D. Nev. Mar. 29, 2012); *see also* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. 3d § 1346 (West 2006).

entire field of aviation safety, thereby prohibiting state law claims concerning the same. Congress, through the Airline Deregulation Act ("ADA"), has also expressly preempted state laws, including common law claims that "relate to" an airline's routes and services.

Plaintiff's claims are unquestionably founded on aviation law that is exclusively in the federal domain.   The Complaint consists of four common law causes of action based on allegations that Plaintiff was retaliated against and terminated for complying with the federal safety regulations and defying Allegiant's directives.  Federal law, however, exclusively occupies the field of aviation safety and cannot be varied, supplemented, or enforced through state law. Further, Plaintiff's claims fall under the ADA's express preemption provision because his conduct in declaring an in-flight emergency and re-routing the plane undoubtedly relate to airline routes and services.  State common law claims simply cannot intrude on these areas of federal law.

In preempting state law claims based on aviation safety, routes, and services, Congress did not leave would-be plaintiffs without a remedy.   Through the Wendell H. Ford Aviation Investment Act of the 21st Century (the "Whistleblower Protection Program" or "AIR21") Congress established an administrative remedy to protect airline employees from retaliation based on aviation safety disputes such as those alleged in Plaintiff's Complaint.  Through AIR21, an employee may obtain reinstatement, back pay, damages, and other remedies.  Plaintiff, however, has forgone his administrative remedy, electing to assert his preempted common law claims, instead.  As a consequence, Plaintiff's Complaint must be dismissed with prejudice.

## II.     FACTUAL STATEMENT[2]

Allegiant is an airline based out of Las Vegas, Nevada.  Dkt. #1, Ex. 1 ¶ 2.  Plaintiff is a former Allegiant pilot.  *Id.*  He was separated from his employment with Allegiant on or about July 23, 2015.  *Id.* ¶ 27.  According to the Complaint, Plaintiff was terminated for "ordering an evacuation" and re-routing a flight in opposition to an allegedly "unlawful company protocol" and Allegiant's supposed desire to have Plaintiff put Allegiant's interests, *i.e.*, profits, above those

---

[2]        Defendants do not concede the facts as alleged in the Complaint, but treat them as true for purposes of this motion only.

1    required by Federal Aviation Administration's aviation safety regulations.  *Id.* ¶¶ 27, 37.  After

2    his termination, Plaintiff did not pursue an administrative claim but, instead, filed common law

3    claims against Allegiant in state court.  *See id.*

4          The Complaint alleges four state law claims against Allegiant and Allegiant's parent

5    company, Allegiant Travel Co. ("Allegiant Travel").  Plaintiff's claims are: (1) Wrongful and

6    Tortious Termination of Employment ("Wrongful Termination"), (2) Defamation, (3) Intentional

7    Infliction of Emotional Distress ("IIED"), and (4) Punitive or Exemplary Damages.  *Id.* ¶¶ 29-45.

8          In his General Allegations, Plaintiff cites the FAA statutes, the implementing regulations

9    found in 14 C.F.R. ("Federal Aviation Regs" or "FARs"), and the related aviation safety

10   standards of care approximately 25 times in 26 paragraphs.  *Id.* ¶¶ 3-38.  Plaintiff goes to great

11   lengths to identify the requisite certifications, command procedures, safety standards, standards of

12   care, and evacuation protocol required under federal law.  *See id.*  On this legal framework,

13   Plaintiff contends he fully complied with the FARs, "which have the force and effect of law," and

14   his "regulatory duty . . . to provide a high degree of care for the safety of his passengers" when he

15   re-routed the plane.  *Id.* ¶¶ 15, 18.  Plaintiff further alleges that Allegiant took actions in violation

16   of the FARs and "retaliated" against Plaintiff for insisting he had acted properly in the face of

17   Allegiant's supposedly "unlawful company protocol."  *Id.* ¶¶ 31, 37, 34.

18         From these general allegations, Plaintiff claims Allegiant's conduct was "retaliatory in

19   that it essentially demanded of the plaintiff . . . to [sic] participate in an activity, policy and/or

20   practice of his employer which violate the Federal Aviation Regulations[.]"  *Id.* ¶ 31.  He further

21   alleges he was defamed through an "intentional attempt to send a message to other Allegiant

22   pilots concerning an unlawful [under the FAA and FARs] company protocol."  *Id.* ¶ 37.  In

23   addition, Plaintiff claims that by "[f]ailing to abide by FAA Rules and Regulations" and

24   attempting "to send a warning message to the line pilots" Allegiant engaged in intentional,

25   extreme, and outrageous conduct that caused him emotional distress.  *Id.* ¶ 41(b)-(c).  Finally,

26   Plaintiff asserts a claim for punitive damages based on Allegiant's supposed "retaliatory and

27   reckless" conduct, which disregarded the FARs and the federally prescribed "high degree of a

28   duty of due care[.]"  *Id.* ¶ 44.

## III.   LAW AND ARGUMENT

### A.   LEGAL STANDARD

A complaint should be dismissed if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Under Rule 8(a)(2), a pleading should provide a "short and plain statement of the claim showing that the pleader is entitled to relief," but ***must*** still contain enough "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For facts to be accepted as true, the pleading must contain more than a formulaic recitation of claim's elements and conclusory statements couched as facts.  *Id.*  Thus, Rule 8 "demand[s] more than an unadorned, the-defendant-unlawfully-harmed me accusation."  *Id.*

In summarizing *Twombly's* paradigm, *Iqbal* identifies "two working principles."  *Id.*  First, courts should not accept allegations as true if they are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id.*  Second, after isolating the well-pleaded allegations, courts should "determine whether [there is a] plausible claim," not merely a "possible" claim.  *Id.*  While Rule 8 is not a particularly rigorous standard, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79.  When claims are merely formulaic recitations and conclusions couched as facts, as is the case with Plaintiff's Second Claim for Relief, the cause of action should be dismissed.  *See id.*

### B.   PREEMPTION UNDER THE FEDERAL AVIATION ACT

#### 1.   The FAA Occupies The Entire Field Of Aviation Safety And Therefore Preempts Plaintiff's Claims.

Plaintiff's state law claims for Wrongful Discharge, Defamation, Intentional Infliction of Emotional Distress and Punitive Damages must be dismissed "because the FAA preempts the entire field of aviation safety through implied field preemption."  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (affirming dismissal with prejudice of plaintiffs' failure to warn claims on grounds of preemption); *Ventress v. Japan Airlines* (*Ventress III*), 747 F.3d 716 (9th Cir. 2014) ("state law claims are preempted because they require the factfinder to intrude upon the federally occupied field of aviation safety"); *Torikawa v. United Airlines Inc.*, 2009 U.S. Dist.

LEXIS 61211 (D. Haw. July 17, 2009) ("Under the FAA, the entire field of aviation safety is impliedly preempted"); *Curtin v. Port Auth.*, 185 F. Supp. 2d 664, 668 (S.D.N.Y. 2005) ("regulations promulgated under the FAA are the central source of federal statutory control . . . prescribe standards of care for the aviation industry" and "an array of specific safety standards").

It is well-established that Congress has the power to preempt state law.  U.S. Const. Art. VI, Cl. 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).  When State laws are preempted by federal law, the State provision is void and unenforceable.  *Montalvo*, 508 F.3d at 471.  Like State statutes or regulations, common law claims falling within a federally preempted area of law are barred and "fail as a matter of law."  *Id.* at 474; *Northwest Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014).

Congress enacted the FAA, "to create and enforce one unified system of flight rules." *Montalvo*, 508 F.3d at 471; *United States v. Christensen*, 419 F.2d 1401, 1404 (9th Cir. 1969).  In doing so, Congress announced its "***intent to make the Federal Aviation Administration the sole arbiter of air safety***" and the "exclusive" authority to enact "air safety standards."  *Montalvo*, 508 F.3d at 472.  In discharging these responsibilities Congress directed the Secretary to "give full consideration to the duty resting upon air carriers to perform their services with the highest possible degree of safety."  *French v. Pan Am Express*, 869 F.2d 1 (1st Cir. 1989); 49 U.S.C. § 1421(b) (emphasis added).  The Secretary, in turn, has "exercise[d] this authority by issuing such pervasive regulations that we can infer ***a preemptive intent to displace all state law on the subject of air safety***."  *Id.* (emphasis added).  These regulations are found in Title 14 of the Code of Federal Regulations and address subjects such as "airworthiness standards, crew certification and medical standards, aircraft operating requirements," pilot qualifications, evacuation standards, and the "general federal standard of care for aircraft operators[.]"  *Montalvo*, 508 F.3d at 472 (citing 14 C.F.R. § 91.13(a)); *Ventress III*, 747 F.3d at 722.

In short, "The comprehensiveness of these regulations demonstrates that the Administrator has exercised his authority to regulate aviation safety to the exclusion of the states."  *Montalvo*,

508 F.3d at 473.[3]  In *Montalvo*, for example, the Ninth Circuit considered "the question of whether and to what extent the [FAA and the FARs] . . . regarding aviation safety, preempt state law standards of care[.]"  *Id.* at 468.  Recognizing the "comprehensive statutory scheme" and the "pervasive" regulatory framework, the court concluded, "The FAA, together with federal air safety regulations, establish ***complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, states***."  *Id.* at 474 (emphasis added).  As a consequence, the plaintiffs' state law claims, which relied on common law standards, could not be used to supplement federal law and "fail[ed] as a matter of law."  *Id.*

In *Ventress III*, which is binding precedent and squarely on point, the Ninth Circuit held that the FAA preempted a former pilot's common law wrongful discharge and retaliation claims.  747 F.3d at 719.  The court explained, "The purpose, history, and language of the FAA lead us to conclude that Congress intended to have a single, uniform system for regulating aviation safety," and the "Administration is "the sole regulator of this field.'"  *Id.* at 721.  Applying *Montalvo's* principles, the court identified that the plaintiff's claims implicated aviation safety by being dependent on FAA "certificates" and "standards."  *Id.*  The court concluded that the "FAA and accompanying [regulations] preempt Ventress's retaliation and constructive termination claims . . . *because they require the factfinder to intrude upon the federally occupied field of aviation safety*[.]"  *Id.* at 719 (emphasis added).

### 2.   Plaintiff's Claims Are Preempted Because They Intrude Upon The Federally Occupied Field Of Aviation Safety.

Plaintiff's state law claims must be dismissed because they seek to supplement, vary, and enforce state law in a field that has been entirely and exclusively occupied by federal law and where "the Federal Aviation Administration is the sole arbiter."  *Montalvo*, 508 F.3d at 472;

---

[3]    *See also French*, 869 F.2d at 4 ("The regulations promulgated by the Secretary under the Act bulwark our finding that Congress intended to occupy the field of . . . air safety,"); *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010) ("Based on the FAA's purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA, we conclude that federal regulation occupies the field of aviation safety to the exclusion of state regulations"); *Frank v. Delta Airlines, Inc*., 314 F.3d 195 (5th Cir. 2002) (holding state law negligence claim should have been dismissed as preempted under the FAA's safety provisions); *Curtin*, 183 F. Supp. 2d at 666.

1   *Ventress III*, 747 F.3d at 719.  As described above in the Statement of Facts, Plaintiff asserts

2   common law claims for Wrongful Termination, IIED, and Punitive Damages.  These claims,

3   however, are futile because each one depends on an analysis of the FARs through the lens of state

4   law in an area where "the federal interest [in aviation safety] is so dominant that the federal

5   system . . . preclude[s] enforcement of state laws on the same subject."  *French*, 869 F.2d at 5.

6       Without question, Plaintiff's claims are premised on aviation safety issues covered in the

7   FAA and pervasively regulated in the FARs.  In fact, Plaintiff's General allegations illustrate the

8   pervasiveness of the FARs at issue in this action.  Plaintiff references the FAA and FARs

9   approximately 25 times, which touch on, among other things, the issuance of certificates that

10  obligate Allegiant to act with "a high degree of care" (Dkt. #1, Ex. 1 ¶¶ 4 and 8, citing 14 C.F.R.

11  Part 121), Administration approved Operations Specifications (*Id.* ¶ 5, citing Part 121), pilot

12  qualifications (*Id.* ¶ 10, citing Part 11 and Part 91), safety training (*Id.* ¶ 12, citing Part

13  121.533(d)), evacuation protocol (*Id.* ¶ 13, citing FAA-approved Operations Manual), emergency

14  decision-making (*Id.* ¶ 14, citing Part 121.557(a)), air carrier emergency training (*Id.* ¶ 24, citing

15  Part 121.415(4), and a pilot's command responsibility concerning passenger safety (*Id.* ¶ 27).

16      Put simply, Plaintiff's common law claims are an attempt to impose state law on the

17  preempted field of aviation safety.  Through his claims, he seeks to use state law to dictate,

18  interpret, and enforce matters of aviation safety.  This is plainly forbidden by federal law.

19  *Montalvo*, 508 F.3d at 472 (FAA and FARs exclusively occupy field of aviation safety); *Ventress*

20  *III*, 747 F.3d at 719 ("the Federal Aviation Administration is the sole arbiter").  In addition,

21  Plaintiff is attempting to supplement and vary the FAA and FARs by packaging their content into

22  state law claims and purporting to analyze the parties' conduct under state law standards of care.

23  *See, e.g.*, Dkt. #1, ¶ 18 ("in accordance with his regulatory duty ***and his common law***

24  ***obligation***").  For example, Plaintiff alleges a common law, policy-based Wrongful Termination

25  claim that intrudes on the FAA and FARs by assessing the parties' safety-based decisions and

26  actions, in an area where federal policy displaces state policy.  *Id.* ¶¶ 30-32; *Ventress III*, 747 F.3d

27  at 722 ("we hold that federal law preempts state law claims that encroach upon, supplement, or

28  alter the federally occupied field of aviation safety").

Further, Plaintiff's Defamation, IIED, and Punitive Damages claims implicate areas of pervasive aviation-safety regulation and necessitate an inquiry into the FARs concerning "pilot in command" provisions, evacuation protocols, pilot qualifications, and passenger safety.  Dkt. #1, Ex. 1, ¶¶ 35-45; *Ventress III*, 747 F.3d at 722; *Curtin*, 183 F. Supp. 2d at 671 (citing *French*, 869 F.2d at 4).  For example, Plaintiff alleges Allegiant's defamatory publication was an "intentional attempt to send a message to other Allegiant pilots concerning an unlawful [under the FAA and FARs] company protocol."  *Id.* ¶ 37.  Similarly, Plaintiff's IIED claim intrudes on preempted matters by claiming Allegiant "[f]ail[ed] to abide by FAA Rules and Regulations" and attempted "to send a warning message to the line pilots" that they disregard FAA rules and regulations and follow an "unlawful protocol," instead.  *Id.* ¶ 41.  Thus, his claims "invite the factfinder to pass on questions of [aviation safety]" through the lens of State law.  *Ventress III*, 747 F.3d at 722.  This is prohibited because it "impinge[s] on Congress's goal of ensuring a single, uniform system for regulating aviation safety."  *Id.*

In sum, Plaintiff contends, through state law claims, that he was retaliated against, fired, defamed, and incurred emotional distress because Allegiant violated the federal aviation safety laws.  Thus, the inquiry into Allegiant's supposed retaliatory motive or the propriety of its conduct will necessarily "require the factfinder to intrude upon the federally occupied field of aviation safety by deciding questions of pilot . . . qualifications," and compliance with federal aviation safety regulations.  *Ventress III*, 747 F.3d at 719.  As a consequence, Plaintiff's claims "are little more than backdoor challenges to [Allegiant's] safety-related decisions regarding" Plaintiff's "operati[on] [of] a civil aircraft."  *Ventress III*, 747 F.3d at 722.  As such, they must be dismissed.

## C.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE AIRLINE DEREGULATION ACT

Plaintiff's claims are also subject to dismissal based on the express preemption provision in the ADA.  49 U.S.C. § 41713.  Approximately 20 years after its promulgation, Congress amended the FAA to include economic deregulation provisions.  To ensure States do not undo Federal deregulation through regulations of their own, the ADA provides that States "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to

1    a price, route, or service of an air carrier that may provide air transportation under this subpart."

2    *Id.* § 41713(b).  Thus, in addition to the FAA's implied preemption over aviation safety law, the

3    ADA expressly preempts state laws, including common law claims, that relate to an airline's

4    decisions concerning prices, routes, or services.  *Ginsberg*, 134 S. Ct. at 1429.

5          In three successive opinions, the Supreme Court has further defined the ADA's

6    preemptive reach.  In *Morales v. Trans World Airlines, Inc*., the Court explained that the phrase

7    "relates to" has a "broad preemptive purpose" similar to the phrase "relates to" as used in the

8    Employee Retirement Income Security Act.  504 U.S. 374 (1992) (holding that the ADA pre-

9    empted "the use of state consumer protection laws to regulate airline advertising").[4]  In *American*

10   *Airlines Inc. v. Wolens*, 513 U.S. 219 (1995), the Court revisited the ADA's preemptive reach in

11   the context of a state deceptive business practices statute.  *Wolens* reiterated the broad

12   interpretation of the ADA's preemption provision, and noted that the preemption provision's "ban

13   . . . is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean States

14   may not seek to impose their own public policies . . . or regulations on the operations of an air

15   carrier."  *Id.* at 229 n. 5.  Thus, the Court held that the state law deceptive business practices law

16   was preempted because the law "related to" the airline's pricing and services.  *Id.*

17         Most recently, in *Ginsburg*, the Court reaffirmed the ADA's similarity to the broad

18   preemptive force in ERISA.  *Ginsburg* considered whether a "common-law rule like the implied

19   covenant of good faith and fair dealing" was a "law, regulation, or provision" that related to an

20   airline's prices, routes, or services.  134 S. Ct. at 1429.  After determining that common law

21   claims qualified as state law, the Court turned to whether the ADA preempted a breach of the

22   implied covenant of good faith and fair dealing claim.  The Court explained that the frequent flyer

23   program at issue was "connected to the airline's rates because the program awards mileage credits

24

25

26

---

27   [4]     ERISA has an extraordinary preemptive reach proscribing state laws that "relate to an
     employee benefit plan."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987) (citing 29 U.S.C. §

28   1144(a)).    Indeed, ERISA's preemptive scope is so broad and forceful that it invokes the
     "complete preemption" doctrine that extinguishes state law claims.  *Id.* at 65.

that can be redeemed for tickets and upgrades." *Id.* at 1431. In addition, the Court concluded that the program was "connected to services, *i.e.*, access to flights and to higher service categories." *Id.* The common law claim was therefore preempted and properly dismissed. *Id.*

In *Botz v. Omni Air Int'l*, the Eighth Circuit considered the ADA preemption provision in the context of a flight attendant's state whistleblower claim based on her termination for allegedly refusing to violate an FAR. 286 F.3d 488, 489 (8th Cir. 2002). The court stated that the "ADA's pre-emption provision defines [what] will be prohibited," as any State law that "relates to a price, route, or service of an air carrier." *Id.* at 493. "[G]uided by the Supreme Court's explicit determination that the ADA's pre-emption provision has broad scope" similar to ERISA, the phrase "relates to" must be broadly interpreted as preempting enforcement of state laws "*having a connection with or reference to* airline prices, routes, or services." *Id.* at 494.

Applying this analysis to the flight attendant's discharge claim, the court explained that the Minnesota-based claim had "a forbidden connection with air-carrier services," as it had a connection to prices, flights, and services. *Id.* The claim purported to give "broad authorization to flight attendants to refuse assignments, jeopardizing an air carrier's ability to complete its scheduled flights." *Id.* Further, the FAR set standards for the minimum number of flight attendants that must be on board and available to serve passengers and execute safety procedures." *Id.* Thus, "[a]n air carrier that is confronted with a flight attendant's refusal to serve on a flight to which he has been assigned" may be unable to complete the flight and thus forced to "reschedule the ticketed passengers onto other flights." *Id.* Accordingly, the ADA preempted the plaintiff's state law claim. *Id.* at 498-97; *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383 (5th Cir. 2004) (holding personal injury claim concerning insufficient legroom was preempted by the ADA insofar as "such a requirement would inexorably relate to prices charged by airlines"); *Huggar v. Northwest Airlines, Inc.*, 1999 U.S. Dist. LEXIS 1026 (N.D. Ill. Jan. 27, 1999) (holding the ADA preempted a passenger's tort claims because they related to airline services).

The *Botz* Court also noted that "Congress's enactment of the WPP [AIR21] strengthens our conclusion, for the WPP's protections illustrate the types of claims Congress intended the ADA to pre-empt." *Id.* at 497. "In fashioning a single, uniform standard for dealing with

employee complaints of air-safety violations, Congress furthered its goal of ensuring that the price, availability, and efficiency of air transportation rely primarily upon market forces and competition rather than allowing them to be determined by fragmented and inconsistent state regulation"  *Id.*  Thus, in establishing the WPP administrative remedy (discussed *infra*), which is reviewable by the federal courts of appeals, "Congress insured a more uniform interpretation of the WPP, and thus a more predictable response to public air-safety complaints[.]"  *Id.*; *see also Baily v. Rocky Mt. Holdings, LLC*, 2015 U.S. Dist. LEXIS 138774 (S.D. Fla. Sept. 23, 2015) (holding "this state and common law challenge is expressly disallowed by the ADA's express preemption provision").

Here, Plaintiff's claims are preempted because they "relate to" or "have a connection with or reference to" prices, routes, and services.  Plaintiff was the captain of a flight from St. Petersburg, Florida to Hagerstown, Maryland.  Dkt. #1, Ex. 1 ¶ 9.  During the flight he disregarded a protocol he deemed unlawful, declared an emergency, rerouted, and grounded the plane.  *Id.* ¶¶ 16-27.  In doing so, he "compromised the safety of [his] crew and [his] passengers and led directly to [passenger] injuries."  *Id.* at Ex. 2.

Just as in *Botz*, Plaintiff's Complaint relates to prices, routes, and services and therefore cannot be addressed through state law claims.  In fact, Plaintiff specifically alleges he was terminated for failing to take "into consideration the ***Company assets and rescheduling costs*** before making such decisions." Dkt. #1 at 2:12-13 (emphasis added).  Further, Allegiant notified Plaintiff that he failed to "demonstrate professionalism, maturity and concern" by ordering "an evacuation that was entirely unwarranted" and for "repeatedly insist[ing] that [he] made a good decision to evacuate the aircraft and, if faced with a similar situation, [he] would follow the same course of action." Dkt. #1, Ex. 2 to Complaint.  Plaintiff's conduct therefore "put in jeopardy the air carrier's ability to render service to its passengers[.]"  *Simonds v. PAN AM*, 2003 U.S. Dist. LEXIS 17328 *14 (D. N.H. Sept. 30, 2003) (holding common law claims preempted under the ADA where the employee's conduct "threatened to ground a plane").

Without question, by rerouting the plane, forcing an emergency landing and evacuation, and insisting he would do so again, Plaintiff's claims have a connection with Allegiant's prices,

routes, and services.   Thus, in addition to being preempted by federal aviation safety law, Plaintiff's claims are preempted by the ADA.   In seeking to impose State law on subjects that relate to, or have a connection with an airline's prices, routes or services, Plaintiff's common law claims seek to regulate a proscribed area of law.   As a consequence, his claims must be dismissed.

### D.   PLAINTIFF HAS FORGONE HIS FEDERAL ADMINISTRATIVE REMEDY

Although State common law claims concerning aviation safety, prices, routes, or services are preempted, Congress created a remedy for airline employees who believe they have been retaliated or discriminated against because of aviation safety disputes with their employers.   As mentioned above, AIR21 or the WPP prohibits air carriers from discharging an employee because the employee reported an aviation safety violation or refused to engage in conduct contrary to the FARs.[5]   49 U.S.C. § 42121.   The WPP does not provide employees with a private right of action, but does provide them with an administrative remedy appealable to the federal courts.   *Id.* § 42121(b)(1); *Watson v. Air Methods Corp.*, 2015 U.S. Dist. LEXIS 44436 *3 (E.D. Mo. Apr. 6, 2015) ("plaintiffs do not have a private right of action").   The remedies include reinstatement, damages, and back pay.   49 U.S.C. § 42121(b)(1).

As explained in *Botz*, *supra*, through Congress's enactment of the WPP, there is "a single, uniform standard for dealing with employee complaints of air-safety violations[.]"   286 F.3d at 489.   In establishing this administrative remedy, "Congress insured a more uniform interpretation" of aviation safety law that creates "a more predictable response to public air-safety complaints[.]"   *Id.*   Thus, in entirely occupying the field of aviation safety and preempting claims relating to prices, routes, or services, Congress did not leave potential plaintiffs without a remedy.

To invoke the WPP's protections "against retaliation by their employers for a variety of 'whistleblowing conduct' based on any actual or alleged federal air-safety violation," an individual who believes he or she has been wrongly discharged must file a complaint with the Secretary of Labor within 90 days of discharge.   *Botz*, 286 F.3d at 491; 49 U.S.C. § 42121(b)(1). The Secretary investigates the complaint and, if meritorious, issues findings with relief such as

---

[5]      Courts refer to 49 U.S.C. § 42121 as the Whistleblower Protection Program ("WPP") or AIR 21."

reinstatement, back pay, and/or compensatory damages.  49 U.S.C. § 42121(b)(1).  Parties may object to the Secretary's order and seek a hearing.  *Id.* § 42121(b)(2)(A).  Subsequent to the hearing, the Secretary must issue a final order, which may be reviewed by the U.S. Court of Appeals for the circuit in which the violation allegedly occurred.  *Id.* § 42121(b)(4)(A).

Thus, while federal law preempts State common law claims concerning aviation safety, "the WPP provides a replacement . . .  for such claims."  *Wright v. Nordam Group, Inc.*, 2008 U.S. Dist. LEXIS 22329 *11 (N.D. Okl. March 20, 2008).  Accordingly, when faced with wrongful discharge or other common law claims that would fall under AIR21's broad purview, district courts should dismiss the claims for failure to exhaust administrative remedies.  *Watson*, 2015 U.S. Dist. LEXIS 44436 at *3.[6]  When the dismissal occurs under circumstances where a subsequent "filing with the Secretary of Labor would be futile because any filing with the Secretary of Labor would be untimely," the dismissal should be made with prejudice.  *Id.* at 4 (dismissing with prejudice a wrongful discharge claim where the 90 day period for filing with the Secretary had lapsed) (citing 49 U.S.C. § 42121(b)(1)); *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) (dismissing claims because plaintiff "fail[ed] to exhaust her administrative remedies").

Here, Plaintiff has effectively alleged a whistleblower claim outside the WPP.  He contends he was retaliated against for his purported compliance with federal aviation safety regulations and his refusal to follow an Allegiant protocol that he deemed unlawful.  Dkt. #1, Ex. 1 ¶ 18 (Plaintiff "in accordance with his regulatory duty . . . declared an emergency"); ¶ 27 (Allegiant terminated Plaintiff for not placing its interests "above his command responsibility of caring for the safety of his passengers and crew"); ¶ 31 (Allegiant's conduct was "retaliatory in

---

[6]      Further, in conjunction with the FAA/FARs implied preemption and the ADA's express preemption, the WPP provides an additional basis for preemption.  *Id.*; *Botz*, 286 F.3d at 489; *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11 (ADA and SPP preempted "plaintiff's claims of constructive fraud and false light" as "Congress intended to preempt state law claims concerning aviation safety . . . and the WPP provides and replacement cause of action for such claims"); *See also Tucker v. Hamilton Sundstrand Corp*., 268 F. Supp. 2d 1360 (S.D. Fla. 2003) (holding the ADA and WPP preempted state whistleblower claims); *Simonds*, 2003 U.S. Dist. LEXIS 17328 at *14 (holding state whistleblower claims were preempted under the ADA and WPP).

1    that it essentially demanded of the plaintiff . . . to violate the Federal Aviation Regulations"); ¶ 41

2    (Allegiant's "extreme and outrageous conduct" consisted of "[f]ailing to abide by FAA Rules and

3    Regulations and permitting Captain Kinzer to [sic] operate its aircraft" as required by law).

4         Plaintiff therefore should have pursued a WPP claim.  He failed to avail himself of that

5    remedy, and instead tried to circumvent the Congressionally prescribed relief through common

6    law claims that are preempted by federal law.  As a consequence Plaintiff's Complaint should be

7    dismissed.  Moreover, the Complaint should be dismissed with prejudice because any attempt to

8    pursue a WPP claim at this point would be futile, as the 90 day period in which Plaintiff should

9    have filed his WPP claim has long since lapsed.  49 U.S.C. § 42121(b)(1)).  Indeed, Plaintiff

10   concedes he was terminated on or about July 23, 2015, which means he should have filed his

11   complaint with the Secretary no later than October 23, 2015.  *See* Dkt. #1, Ex. 1 ¶ 27 (referencing

12   Ex. 2 to Complaint).  Thus, as a consequence of choosing to vindicate his grievances through state

13   law claims rather than the adequate and available remedy under the WPP, Plaintiff has

14   relinquished his rights and his Complaint should be dismissed with prejudice.

15       **E.**  **PLAINTIFF FAILS TO ALLEGE SUFFICIENT FACTS TO ADEQUATELY STATE HIS COMMON LAW CLAIMS**

16

17         **1.**  **Plaintiff Cannot State A Wrongful Termination Claim Because Nevada Does Not Recognize A Policy On Aviation Safety.**

18        Plaintiff's First Cause of Action, for Wrongful Termination should be dismissed because

19   Nevada does not have a public policy prohibiting terminating an at-will employee based on

20   compliance or non-compliance with the FAA or FARs.  *Borodkin v. Omni Air. Int'l*, 279 Fed.

21   Appx. 517 (9th Cir. May 22, 2008) (affirming summary judgment to airline where plaintiff

22   alleged violation of FAA drug and alcohol testing protocol because Nevada had no such public

23   policy interest).  Under Nevada law, "tortious discharges may arise when an employer dismisses

24   an employee in retaliation for the employee's doing of acts which are consistent with or

25   supportive of sound public policy and the common good."  *D'Angelo v. Gardner*, 107 Nev. 704,

26   718, 819 P.2d 206, 216 (1991).  Otherwise, an at-will employee may be discharged for no reason

27

28

at all.  *Id.*  Further, a policy-based tortious discharge claim will not be recognized when the plaintiff has "a comprehensive statutory remedy" available.  *Shen v. Amerco*, 111 Nev. 735, 744, 896 P.2d 469, 457 (1995); *Sands Regent v. Valgardson*, 105 Nev. 456, 777 P.2d 900 (1989).

Plaintiff alleges that in terminating his employment Allegiant's conduct "amounts to a reckless disregard of the public policy of all states including the State of Nevada, particularly by reason of the application of the Federal Aviation Regulations[.]"  Dkt. #1, Ex. 1 ¶ 32.  As detailed at length above, Congress entirely preempted the field of aviation safety, thereby displacing state law on aviation safety matters.  *Montalvo*, 508 F.3d at 472 (Congress has clearly indicated a preemptive intent to displace all state law on the subject of air safety").  Nevada therefore cannot, as a matter of law, enforce a policy concerning aviation safety through a tortious discharge claim.  Further, Congress provided Plaintiff with a statutory remedy through AIR21.  The availability of AIR21 as a complete remedy therefore eliminates the need to carve out a new exception to the at-will nature of employment and precludes Plaintiff's Wrongful Termination claim.  Thus, as an at-will employee, Allegiant was able to terminate Plaintiff's employment "with or without cause."  *Vancheri v. GNLV Corp.*, 105 Nev. 417, 421, 777 P.2d 366, 369 (1989).

### 2.   Plaintiff Has Not Adequately Alleged A Defamatory Statement Or Unprivileged Publication.

Plaintiff's Second Cause of Action for Defamation should be dismissed because he fails to allege that any particular statement is false and defamatory and fails to allege sufficient facts to assess whether the unidentified statements were published without privilege.   In Nevada, a defamation claim requires (1) a demonstrably false and defamatory statement, rather than a true statement or opinion; "(2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages"  *Clark County Sch. Dist. v. Virtual Educ.*, 125 Nev. 374, 385, 213 P.3d 496, 503 (2009).  "Whether a statement is defamatory is generally a question of law."  *Lubin v. Kunin*, 117 Nev. 107, 112, 17 P.3d 422, 427 (2001).

Plaintiff alleges that the termination letter (attached to his Complaint as Ex. 2) and other unidentified emails "contain false and defamatory statements concerning Captain Kinzer."  Dkt. #1, Ex 1 ¶ 35.  The termination letter consists of seven sentences.  *Id.* at Ex. 2.  Plaintiff does not

identify which of these statements, if any, are false and defamatory.  Rather, he merely alleges the letter as a whole is defamatory.  Further, Plaintiff fails to allege what was said in the unidentified "other writings and emails."  *Id.* ¶ 35.  This is the precise type of allegation deemed insufficient under the *Iqbal/Twombly* standard.  *Iqbal*, 556 at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  Thus, "[e]ven under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient."  *New Show Studios*, 2014 U.S. Dist. LEXIS 90656 *41.  Without more, neither Defendants, nor the Court can assess whether, as a matter of law, the unidentified statements are capable of defamatory construction or whether they were mere opinion.  *Nev. Ind. Broadcasting Corp. v. Allen*, 664 P.2d 337, 341-42 (Nev. 1983) (discussing statements of "opinion").

Next, Plaintiff fails to allege enough facts to assess whether the statements were published to third parties and done so without privilege.[7]  For example, there is a "qualified privilege" when there is "(1) an interest to be upheld, (2) a statement limited in scope to this interest, (3) good faith, (4) a proper occasion, and (5) proper [publication.]"  *Cox v. Galazin*, 460 F. Supp. 2d 380, 390 (D. Nev. 2006); *Spitzmesser v. Tate Snyder Kimsey Architects, Ltd.*, 2011 U.S. Dist. LEXIS 68696 *14-15 (D. Nev. June 27, 2011) ("Complaints filed with a supervisory authority . . . are considered quasi-judicial proceedings" and invoke a qualified privilege).  Subsumed within this qualified privilege is the intra-corporate that immunizes an employer from liability, as it is essentially the corporation talking to itself.  *See* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, THE LAW OF TORTS at 185 (2d ed. 2011) ("the 'contemporary view' is that intra-office communications do count as publications, but are protected by a qualified privilege, which allows an employee to recover only if the employer abuses the privilege").

Plaintiff contends Allegiant gave the letter to "Greg Baden, who was not privileged to receive the same."  Dkt. #1, Ex. 1 ¶ 36.  Mr. Baden, however, is the Vice President of Flight

---

[7]     Notably, Plaintiff has now made his termination letter a publicly available document by attaching it to his Complaint.  Thus, without identifying any publication by Allegiant, other than intra-corporate publication to Allegiant Executives, Plaintiff has self-published the supposedly defamatory statements.

Operations.  *Id.* at Ex. 2.  Plaintiff offers no explanation for why an Allegiant Executive would not be entitled to view the letter or how Mr. Baden's review of the letter could cause Plaintiff any harm.  Rather, based on the sparse facts alleged, it appears the statement would be privileged as an intra-corporate communication.  *See Cox*, 460 F. Supp. 2d at 390; *Spitzmesser*, 2011 U.S. Dist. LEXIS 68696 at *14-15 (D. Nev. June 27, 2011); *See* THE LAW OF TORTS at 185.  Further, Plaintiff alleges Allegiant has not controlled "access to the file" containing the termination letter, but does not allege that anyone has viewed the letter.  *Id.*  Finally, Plaintiff alleges in purely conclusory fashion that others "have made other unprivileged publication to third parties[.]"  *Id.* This is insufficient to state a claim of defamation.  *See Cox*, 460 F. Supp. 2d at 390.

### 3.   Plaintiff Has Not Sufficiently Alleged The Requisite Extreme And Outrageous Conduct To Satisfy An Intentional Infliction of Emotional Distress.

A properly pleaded intentional infliction of emotional distress claim requires, "among other elements, that the defendant's conduct be extreme and outrageous with either reckless disregard or intent to cause the emotional distress," and that the alleged conduct "actually" or "proximately" caused such distress.  *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90 (1981); *De Los Reyes v. Southwest Gas Corp.*, 2007 U.S. Dist. LEXIS 57421 *11 (D. Nev. Aug. 2, 2007). Beyond being intentional and extreme or outrageous, the conduct must be directed at the plaintiff. *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (Sup. Ct. 1991); *Rabello*, 97 Nev. at 128, 625 P.2d at 94 (noting narrow exception where the bystander is a close relative of the plaintiff).

The supposed "extreme and outrageous" acts must "exceed all bounds of decency" and be "regarded as utterly intolerable."  *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372, 281 Cal. Rptr. 242 (1991); *Reyes*, 2007 U.S. Dist. LEXIS 57421 at *11.   Terminating an employee's employment does not meet this standard.  *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).  In addition, "mere insults [and] indignities" are not sufficient to establish liability for emotional distress.  *Reyes*, 2007 U.S. Dist. LEXIS 57421 at *11.  In *Reyes*, for example (a pre-*Iqbal/Twombly* case), the court considered the plaintiff's allegations such as the "fact" that he was "subjected to various forms of discrimination and unequal treatment related to his race . . . and such discriminatory and/or disparaging conduct created an overall hostile work environment." *Id.*

1   at *12 (alteration in original).  The plaintiff further claimed, "Defendant's conduct . . . was

2   outrageous and beyond the bounds of conduct usually tolerated in a civilized community."  *Id.*

3   The court concluded, "Even under the liberal rules of notice pleading [before *Iqbal/Twombly*],

4   Plaintiff has failed to state sufficient facts to support his intentional infliction of emotional

5   distress claim."  *Id.*  As a consequence, the court dismissed the cause of action.  *Id.* at *13.

6   In another decision decided after *Iqbal/Twombly*, several former employees brought Title

7   VII and common law claims against an employer and a purported individual supervisor.  *Jojola v.*

8   *American Pac. Corp.*, 2014 U.S. Dist. LEXIS 161315 *1 (D. Nev. Nov. 18, 2014).  The plaintiffs

9   alleged intentional infliction of emotional distress based on "unsolicited hostile and sarcastic

10   remarks [about protected characteristics]" and because the supervisor "engaged in conduct that

11   was outrageous in character and extreme in degree."  *Id.*  Specifically, plaintiffs alleged the

12   supervisor discriminated against female, Native American, and Catholic employees by treating

13   them unfairly, denying them leave time for not justifiable reason, "pitting" them against each

14   other to ensure the plaintiffs failed, and "bullying and intimidati[ng]" them.  *Id.* at *2-3.

15   The court noted these were the same allegations on which the discrimination claims were

16   based, and stated, "[A] discrimination claim does not create a claim for intentional infliction of

17   emotional distress."  *Id.* at *9.  Based on these allegations, the "[p]laintiffs fail[ed] to show that

18   the alleged discriminatory conduct was extreme and outrageous.  Further, plaintiffs did not show

19   that they suffered severe or extreme emotional distress."  *Id.* at *9-10.  As a consequence, "the

20   intentional infliction of emotional distress allegations d[id] not rise above the speculative level

21   necessary to survive a 12(b)(6) motion to dismiss."  *Id.* at *10.

22   Plaintiff's IIED claim should be dismissed under Rule 12(b)(6) because, even if accepted

23   as true, he has not shown that Allegiant engaged in "utterly intolerable," conduct that "exceeded

24   all bounds of decency."   Plaintiff merely alleges that the supposed "extreme and outrageous

25   conduct" is the same conduct on which his Tortious Discharge and Defamation claims are based.

26   *See Jojola*, 2014 U.S. Dist. LEXIS 161315 at *9.  Specifically, Plaintiff alleges that (1) Allegiant

27   took "advantage of" FAA "trust and confidence . . . placing its own financial benefit above that of

28

Jackson Lewis P.C.
Las Vegas

19

1
2
3

fare paying passengers," (2) failed "to abide by FAA Rules and Regulations and permitting [Plaintiff] to operate its aircraft in the best interest of his passengers," and (3) "[a]ttempting to send a warning message to the line pilots of Allegiant[.]"  Dkt. #1, Ex. 1 ¶ 41.

4
5
6
7
8
9
10

Notably, even if Allegiant "took advantage" of the FAA and "fare paying passengers," and attempted to "send a warning message to" other Allegiant pilots, such acts were not directed at Plaintiff and are thus irrelevant for purposes of his IIED claim.  *Rabello*, 97 Nev. at 128, 625 P.2d at 94.   Thus, all that is left is Plaintiff's claim that Allegiant violated "FAA Rules and Regulations."  Dkt. #1, Ex. 1 ¶ 41.  Simply attaching the label "extreme and outrageous" to alleged conduct that would be generally tortious, does not make the conduct extreme and outrageous.  *Reyes*, 2007 U.S. Dist. LEXIS 57421 at *12.

11
12
13
14
15
16
17
18
19
20

Finally, Plaintiff has not pleaded the element of actual distress with the requisite specificity.   To adequately state severe emotional distress, Plaintiff must allege "objectively verifiable indicia" establishing he "actually suffered extreme or severe emotional distress."  *Baker v. Nevada*, 2015 U.S. Dist. LEXIS 62959 *19, 2-14-cv-1631-JAD-VCF (May 12, 2015).   The Ninth Circuit has found, for example, that emotional injuries consisting of "[a]nxiety, sleeplessness, upset stomach, [and] sometimes muscle twitches," without more, are not "severe." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013).  Here, Plaintiff has stated in conclusory terms that Allegiant's "conduct was recklessly indifferent to the likelihood that its actions would cause severe emotional distress to the Plaintiff and caused and will cause severe emotional distress[.]"  Dkt. #1, Ex. 1 ¶ 42.  This allegation is plainly insufficient.

21
22
23
24
25
26

In sum, far more than a thin line separates an alleged regulatory violation from conduct "exceeding all bounds of decency" or conduct "regarded as utterly intolerable."  *McDaniel*, 230 Cal. App. 3d at 372.  As alleged in the Complaint, Plaintiff has not identified "extreme and outrageous" conduct.  Rather, he has identified arguably tortious conduct and slapped on the boilerplate recitations of an IIED claim's legal elements.  This is insufficient under Rule 8 and Plaintiff's IIED claim must therefore be dismissed.

27
28

1

### 4.    Punitive Damages

2

Plaintiff's Fourth Cause of Action for Punitive Damages should be dismissed because

3

"punitive damages" are not a cause of action, but a remedy.  *Copeland v. Liberty Life Assur. Co.*,

4

2015 U.S. Dist. LEXIS 90764 (N.D. Cal. July 10, 2015); *Waltman v. Fahnestock & Co.*, 792 F.

5

Supp. 31, 33 (E.D. Pa. 1992) ("punitive damages are a remedy, not a cause of action").

6

### F.    ALLEGIANT TRAVEL CO. IS NOT A PROPER PARTY

7

Allegiant Travel should be dismissed because it was not Plaintiff's employer and took no

8

discernable action in the events described in the Complaint beyond a parent-subsidiary

9

relationship.  "It is a general principle of corporate law deeply ingrained in our economic and

10

legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United*

11

*States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations omitted).  Merely pleading that one

12

party is the parent company cannot establish a claim against the parent.  *See Goff ex rel. Estate of*

13

*Torango v. Harrah's Operating Co., Inc.*, 392 F. Supp. 2d 1244, 1245-46 (D. Nev. 2005)

14

(granting judgment for defendant where plaintiff "failed to allege [the parent company] had a

15

continuing and substantial connection with the alleged wrongful acts attributed to its

16

subsidiaries"); *Nat'l Convenience Store v. Fantauzzi*, 94 Nev. 655, 657, 584 P.2d 689, 691

17

(1978).

18

This bedrock principle applies to Plaintiff's common law tort claims.  *Young v. Boggs*,

19

2011 U.S. Dist. LEXIS 74459 *7-8 (D. Nev. July 11, 2011) (dismissing Nevada state law claims

20

where "the only fact regarding the entities' relationship alleged in the Amended Complaint [was]

21

that [the moving entity was another entity's] parent company"); *Roll v. Tractor, Inc.*, 140 F. Supp.

22

2d at 1078 (granting summary judgment to parent corporation in personal injury tort context);

23

*Lopez v. Goldcorp USA Inc.*, 2010 U.S. Dist. LEXIS 84126 *4-5 (D. Nev. Aug. 13, 2010) (the

24

"mere parent-subsidiary relationship . . . does not justify imposition of liability on [the parent]").

25

In *Boggs*, for example, the plaintiff asserted claims against her former employer, Pardee

26

Homes of Nevada, and her employer's parent corporation, Weyerhaeuser.  2011 U.S. Dist. LEXIS

27

74459 at *1.  Weyerhaeuser moved to dismiss the claims and plaintiff opposed, arguing that

28

"Weyerhaeuser and Pardee [we]re integrated enterprises[.]"  *Id.* at *7-8.  The court, however,

noted "the only fact regarding the entities' relationship alleged in the Amended Complaint [was] that Weyerhaeuser [was] Pardee's parent company." *Id.* at *8.  The court concluded, "The mere fact that Weyerhaeuser is Pardee's parent company is not a sufficient factual allegation to indicate that the two entities are also integrated enterprises," and dismissed the complaint.  *Id.* at *8.

Here, Plaintiff's claims against Allegiant Travel should be dismissed because the allegations do not implicate, let alone allege, an integrated enterprise.  Allegiant Air, LLC employed Plaintiff, not Allegiant Travel Co.  Further, the only allegation tying Allegiant Travel Co. to the dispute is that Allegiant Air, LLC is "an operating subdivision of Allegiant Travel Co. Dkt. #1, Ex. 1 at 1:24-26.  Plaintiff does not attribute any particular wrongdoing to Allegiant Travel Co., has not alleged a "continuing and substantial connection," and makes no attempt to establish the entities as a joint-enterprise.  *Goff ex rel. Estate of Torango*, 392 F. Supp. 2d at 1245-46; *Fantauzzi*, 94 Nev. at 657, 584 P.2d at 691.  Allegiant Travel Co. must therefore be dismissed.

## IV.    **CONCLUSION**

Based on the foregoing argument, Plaintiff's Complaint should be dismissed with prejudice.

Dated this 16th day of December, 2015.

JACKSON LEWIS P.C.


_____/s/ Steven C. Anderson_____
Veronica Arechederra Hall, Bar No. 5855
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendants*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 16th day of December, 2015, I caused to be served a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS** via the Court's CM/ECF Filing, properly addressed to the following:

Michael A. Urban
Sean W. McDonald
THE URBAN LAW FIRM
4270 S. Decatur Blvd., Ste. A-9
Las Vegas, Nevada 89103

*Attorneys for Plaintiff*

                                                      /s/ Emily Santiago
Employee of Jackson Lewis P.C.

4820-5897-5276, v. 1

Jackson Lewis P.C.
Las Vegas