1  Veronica Arechederra Hall, Bar No. 5855
   veronica.hall@jacksonlewis.com
2  Steven C. Anderson, Bar No. 11901
   steven.anderson@jacksonlewis.com
3  **JACKSON LEWIS P.C.**
   3800 Howard Hughes Parkway, Suite 600
4  Las Vegas, Nevada 89169
   Tel: (702) 921-2460
5  Fax: (702) 921-2461

6  *Attorneys for Defendants*

7

8                    **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF NEVADA**

10  JASON KINZER, an individual,              Case No. 2:15-cv-2306-JAD-PAL

11              Plaintiff,

12        v.                                   **DEFENDANTS' OPPOSITION TO
                                               MOTION FOR REMAND**
13  ALLEGIANT AIR, LLC, a Nevada limited
    liability company; and ALLEGIANT
14  TRAVEL CO. a Nevada corporation,

15              Defendants.

16  **I.    INTRODUCTION**

17       Plaintiff is a former pilot for Defendant Allegiant Air, LLC ("Allegiant").[1]  He filed his

18  Complaint in state court, alleging that, among other things, he was terminated in retaliation for

19  complying with "Federal Aviation Regulations" ("FARs") and opposing Allegiant's allegedly

20  "unlawful company protocol" concerning certain aspects of aviation safety.  Dkt. #1, Ex. 1 ¶¶ 31,

21  37.  The Complaint asserts four claims, each of which is purportedly based on state common law.

22  Regardless of the names Plaintiff attached to his claims, even a superficial skimming of his

23  Complaint and its nearly 40 citations and references to federal aviation law demonstrates that his

24  Complaint arises under federal law and relates to the field of aviation safety.

25       Congress has entirely preempted state law concerning aviation safety through the

26  enactment of the Federal Aviation Act ("FAA") as amended by the Airline Deregulation Act

27  _____

28  [1]      Allegiant Travel Co. ("Allegiant Travel") is also named as a Defendant.  Allegiant, not Allegiant
    Travel, however, was Plaintiff's employer.  Thus, Allegiant Travel maintains that it is not a proper party to
    this action.  *See* Dkt. #9, Motion to Dismiss.

("ADA") and Whistleblower Protection Program ("WPP"), in addition to the Federal Aviation Administration's ("Administration") pervasive safety regulations.  This shows Congress's intent to displace patchwork state regulation and create a uniform body of aviation law, complete with a statutory remedy, and shaped by the special expertise of the federal forum.  Further, Congress highlighted the types of state law claims that are completely preempted by enacting the WPP, which is a statutory remedy for aviation safety based retaliation claims.  The WPP thus serves as a replacement claim for displaced state law remedies.  But a common law retaliation claim based on alleged federal aviation safety violations is precisely what Plaintiff alleges in his Complaint, and he cannot obtain a remedy without necessarily resolving disputed issues of federal aviation law.

Accordingly, Defendants removed this action to federal court.  Plaintiff's Motion for Remand ("Motion") should be denied.  The Motion contends that this action should be remanded because Plaintiff's claims are not federal on their face, and that complete preemption is not applicable because the Ninth Circuit and Supreme Court have not squarely addressed the concept in the aviation safety context.  Plaintiff, however, fails to address *why* the complete preemption doctrine should not apply.  While, the Ninth Circuit and Supreme Court have not squarely addressed the issue, a growing body of law, including decisions from the Fifth and Tenth Circuits, establishes that, similar to ERISA, federal aviation law completely preempts state law claims concerning aviation safety and the ADA.  This means the preemptive force transforms such claims into federal claims for jurisdictional purposes.

Further, Plaintiff has *entirely ignored the substantial federal question and artful pleading doctrines*, which establish federal jurisdiction under the well-pleaded complaint rule, even if Plaintiff's claims are not completely preempted.  In short, Plaintiff's claims are subject to "the commonsense notion that a federal court ought to be able to hear claims [alleged] under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engnr & Mfging*, 545 U.S. 308, 312 (2005).  Thus, removal of this action to federal court was proper, and Plaintiff's Motion should be denied.

1   II.   **STATEMENT OF FACTS**

2   A.   **Facts Alleged in or Incorporated into Plaintiff's Complaint**[2]

3   Plaintiff is a former Allegiant pilot.  Dkt. #1, Ex. 1 ¶ 2.  He was separated from his

4   employment with Allegiant on or about July 23, 2015.  *Id.* ¶ 27.  Plaintiff alleges he was

5   terminated for "ordering an evacuation" and re-routing a flight in opposition to an allegedly

6   "unlawful company protocol" and Allegiant's supposed desire to have Plaintiff put Allegiant's

7   interest in profits above those required by Federal Aviation Administration's aviation safety

8   regulations.  *Id.* ¶¶ 27, 37.  In his Motion, Plaintiff further states that he was told "he should have

9   first taken into consideration the 'Company assets' and rescheduling costs before making such

10  decisions."  Dkt. #6 at 2:11-13.  Plaintiff's source for this "fact" is the termination letter he

11  received from Allegiant, which is attached to the Complaint.  There, however, Allegiant actually

12  stated Plaintiff "should always demonstrate professionalism, maturity and concern for our

13  customers and your coworkers . . . by operating each aircraft safely, smoothly and efficiently and

14  striving to preserve the Company's assets, aircraft, ground equipment, fuel and the personal time

15  of our employees and customers."  Dkt. #1, Ex. 2.

16  The Complaint cites to or references federal aviation law approximately 40 times.

17  Further, the General Allegations cite to specific federal aviation statutes and regulations 25 times

18  in 26 paragraphs.  *Id.* ¶¶ 3-38.  Plaintiff goes to great lengths to identify the requisite

19  certifications, command procedures, safety standards, standards of care, and evacuation protocol

20  required under federal law.  *See id.*  With this federal law highlighted, Plaintiff contends he fully

21  complied with the aviation safety regulations, "which have the force and effect of law," and his

22  federal "regulatory duty . . . to provide a high degree of care for the safety of his passengers."  *Id.*

23  ¶¶ 15, 18.  Plaintiff further alleges that Allegiant took actions in violation of the FARs and

24  "retaliated" against him for not complying with its alleged "unlawful company protocol."  *Id.* ¶¶

25  31, 34, 37.

26  Plaintiff's four claims are captioned as being based on state common law: (1) Wrongful

27  and Tortious Termination of Employment ("Wrongful Termination"), (2) Defamation, (3)

28  _____

[2]   Defendants do not concede the facts as alleged in the Complaint.

Intentional Infliction of Emotional Distress ("IIED"), and (4) Punitive or Exemplary Damages. *Id.* ¶¶ 29-45.   Specifically, Plaintiff alleges Allegiant's conduct was "retaliatory in that it essentially demanded of the plaintiff . . . to [sic] participate in an activity, policy and/or practice of his employer which violate the Federal Aviation Regulations[.]" *Id.* ¶ 31.   He further alleges he was defamed through an "attempt to send a message to other Allegiant pilots concerning an unlawful [under the FARs] company protocol." *Id.* ¶ 37.   In addition, Plaintiff alleges that, by "[f]ailing to abide by FAA Rules and Regulations" and sending "a warning message to the line pilots," Allegiant caused him severe emotional distress. *Id.* ¶ 41(b)-(c).   Finally, Plaintiff alleges Allegiant's supposed "retaliatory and reckless" conduct was taken in violation of the FARs and the federally prescribed "high degree of a duty of due care[.]" *Id.* ¶ 44.

### B.    Procedural Posture

After his termination on July 23, 2015, Plaintiff did not pursue his statutory remedy under the WPP.  *See generally* Dkt. #1; 49 U.S.C. § 42121.   Instead, on November 10, 2015, Plaintiff filed a lawsuit in the Eighth Judicial District Court for Clark County, Nevada, asserting four claims ostensibly based on state common law.  *Id.* at Ex. 1.   Defendants removed the action to federal court based on federal question jurisdiction.[3]   Dkt. #1.   Plaintiff responded by filing his Motion for Remand on December 11, 2015.  Dkt. #6.   Defendants subsequently filed a Motion to Dismiss, which is currently pending before the Court, arguing that, among other things, Plaintiff's claims must be dismissed because they are preempted by the FAA, ADA, and WPP, and that Allegiant Travel is not a proper party.  Dkt. #9.   And, on December 22, 2015, Defendants filed their Statement Regarding Removed Action.  Dkt. #13.

### III.   PLAINTIFF'S MOTION FOR REMAND SHOULD BE DENIED BECAUSE, DESPITE THE LABEL HE ATTACHED TO HIS CLAIMS, THE COMPLAINT ARISES UNDER FEDERAL LAW

The Court has jurisdiction over this action because Plaintiff's claims "arise under" federal law by virtue of three corollaries to the well-pleaded complaint rule: the doctrines of complete

---

[3]    Defendants' Petition for Removal expressly indicates that removal was based on federal question jurisdiction under § 1441(a).  Defendants did not remove on diversity grounds under § 1441(b), but noted that, the Court would have also had original jurisdiction over this matter on diversity grounds under § 1331 because the parties are completely diverse and the amount in question is easily satisfied.

preemption, substantial federal question, and artful pleading. *Grable*, 545 U.S. at 312 (addressing substantial federal question jurisdiction); *Bailey v. City Atty's Office of N. Las Vegas*, 2014 U.S. Dist. LEXIS 42144 *6, 2:13-cv-343-JAD-CWH (D. Nev. Mar. 28, 2014) (discussing substantial federal questions and artful pleading doctrines); *Turgeau v. Admin Review Bd.*, 446 F.3d 1052, 1055 (10th Cir. 2006) (recognizing complete preemption doctrine's application to FAA/ADA claims).

### A.    Plaintiff's Claims Are Completely Preempted

#### 1.    The Complete Preemption Doctrine

"Complete preemption" is a jurisdictional concept distinct from preemption as an affirmative defense. *Retail Prop. Trust v. United Bhd. of Carp'trs & Jointers of Am.*, 768 F.3d 938, 946 (9th Cir. 2014).  Complete preemption is a corollary to the well-pleaded complaint rule that "confers exclusive federal jurisdiction where Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim." *Id.* at 947.  The doctrine thus applies when federal law totally occupies a field and "pushes aside any state law claims," transforming them into federal claims for jurisdictional purposes. *Assc'd Bldrs & Contrs. v. Local 302 IBEW*, 109 F.3d 1353, 1356 (9th Cir. 1997).  Thus, a complaint alleging "only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character." *Turgeau*, 446 F.3d at 1060.

The complete preemption doctrine is often applied to state law claims that "relate to" ERISA. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990); *Retail Prop. Trust*, 768 F.3d at 947 n. 5.[4]   ERISA, therefore, provides a useful paradigm for analyzing complete preemption under federal aviation law. *See Northwest Inc. v. Ginsburg*, 134 S. Ct. 1422 (2014).  ERISA is a federal law that broadly preempts state law concerning employer sponsored pensions and health plans.  29 U.S.C. § 1001 *et seq.*; *McClendon*, 498 U.S. at 142.  Congress enacted ERISA to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc.*

---

[4]      Historically, the doctrine has most commonly been applied to ERISA, the Labor Management Relations Act and National Bank Act.  *Retail Prop. Trust*, 768 F.3d at 947 n. 5.

*v. Davila*, 542 U.S. 200, 208 (2004).  Accordingly, Section 514(a) of ERISA broadly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a) (emphasis added).

ERISA's "broad" preemptive force is designed to "minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government," and reduce "the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."  *McClendon*, 498 U.S. at 142.  To ensure preemption of state law did not leave interested parties without a remedy, Congress created a private enforcement provision in ERISA § 502.  Thus, the Supreme Court explained, federal courts have jurisdiction over a removed state law action if the plaintiff *could have* brought the claims under ERISA § 502.  *Id.* at 144-45.  In *McClendon*, for example, the Court held "the pre-emptive effect of § 502(a) was so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum."  *Id.*; *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).  In other words, together, ERISA §§ 514(a) and 502 completely preempt state law claims, subjecting the state law claims to federal question jurisdiction.  *McClendon*, 498 U.S. at 144-45.

### 2.    Purpose and Intent of Federal Aviation Law

Through the FAA, FARs, ADA, and WPP, Congress preempted state law concerning aviation safety, flight routes, and airline services.  *Ventress v. Japan Airlines*, 747 F.3d 716, 722 (2014) (holding that the "pervasiveness" of federal aviation safety regulation demonstrates the "congressional goal of a uniform system of aviation safety," thereby preempting state law); *Morales v. TWA*, 504 U.S. 374 (1992) (analyzing ADA preemption in same manner as ERISA preemption); *Botz v. Omni Air Int'l*, 286 F.3d 488, 497 (2002) (noting that the WPP indicates the types of state law claims Congress intended to preempt); 49 U.S.C. §§ 41713, 42121.

While complete preemption has generally applied to a select group of statutory schemes such as ERISA, courts are increasingly applying the doctrine to federal aviation law.  *Wright v. Nordam Group, Inc.*, 2008 U.S. Dist. LEXIS 22329 *11 (N.D. OK Mar. 20, 2008) ("the ADA, as amended by the WPP, completely preempts any state law claim relating to . . . any order, regulation, or standard of the Federal Aviation Administration or other Federal law relating to air

carrier safety"); *Turgeau*, 446 F.3d at 1054, 1060 (noting state law whistleblower claims were completely preempted under the FAA and AIR21/WPP); *TWA v. Mattox*, 897 F.2d 773, 787 (5th Cir. 1990) ("examination of the preemption language in § 1305(a)(1) and its legislative history leads to the conclusion that Congress did intend to preempt so completely the particular area of state laws 'relating to rates, routes, or services' as to preclude state court actions"); *see also In re Korean Air, Ltd*, 567 F. Supp. 2d 1213, 1218-19 (C.D. Cal. 2008) (citing *Mattox supra* is support of ADA's broad preemptive force).  These decisions recognize that, like ERISA, (1) Congress intended to create and enforce a uniform body of federal aviation law, (2) federal aviation law broadly preempts state law and regulation, and (3) the existence of a statutory remedy underscores the types of cases Congress intended to completely preempt.  *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11; *Mattox*, 897 F.2d at 787; *Ginsburg*, 134 S. Ct. at 1422 (comparing ADA to ERISA); *Ventress*, 747 F.3d at 722 (addressing aviation safety preemption).

In 1958, Congress enacted the FAA and created the Federal Aviation Administration.  *See* 49 U.S.C. §§ 40101-46507.  In doing so, Congress gave the Administrator "the authority to enact exclusive air safety standards."  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 472 (9th Cir. 2007).  The Administrator exercised this authority and promulgated "pervasive regulations" that "displace all state law on the subject of air safety."  *Id.*; *see* 14 C.F.R. §§ 21-193.  Thus, "[t]he FAA and regulations promulgated pursuant to it, ***establish complete and thorough safety standards for air travel, which are not subject to supplementation by, or variation among, state laws***."  *Id.* (emphasis added); *Ventress*, 747 F.3d at 722 ("the FAA, together with the [FARs] promulgated by the Federal Aviation Administration . . . occupies the entire field of aviation safety").

In 1978, Congress amended the FAA through the ADA.  *See* 49 U.S.C. § 41713.  The ADA did not alter the FARs, but was enacted to promote airline efficiency through market forces.  *Ginsburg*, 134 S. Ct. at 1428.  To "ensure that the States would not undo federal deregulation with regulation of their own," the ADA includes an express preemption provision that provides, "States may not enact or enforce a law, regulation or other provision having the force and effect of law ***related to*** a price, route, or service of an air carrier[.]"  49 U.S.C. § 41713 (emphasis

added).  This preemption language is virtually identical to ERISA's, which preempts "State laws insofar as they . . . ***relate to*** any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a) (emphasis added).  Thus, "since the relevant language of the ADA is identical [to ERISA]," it is "***appropriate to adopt the same standard***[.]"  *Morales*, 504 U.S. at 383-84 (emphasis added); *Ginsburg*, 134 S. Ct. at 1429-30 (reaffirming *Morales* and holding that state common law claims are preempted because they have the "force and effect of law").

Recognizing a need to establish a private remedy in the face of the broad preemption of state law concerning the field of aviation, in 2000, Congress amended the FAA by enacting the Whistleblower Protection Program, or "AIR21."  49 U.S.C. § 42121; *Botz*, 286 F.3d at 489 (dismissing state law whistleblower claims based on aviation safety considerations and the availability of a remedy through the WPP).  Congress specifically enacted the WPP to protect employees of air carriers from retaliatory action, such as termination, based on disputes concerning aviation safety.  *See* 49 U.S.C. § 42121.  The WPP is an administrative remedy that provides airline personnel with a full spectrum of relief, including, among other things, reinstatement, damages, and back pay.  *Id.* § 42121(b)(1).  These remedies may be enforced through the federal district courts or appealed to the circuit courts of appeals.  *Id.* § 42121(b)(1); *Watson v. Air Methods Corp.*, 2015 U.S. Dist. LEXIS 44436 *3 (E.D. Mo. Apr. 6, 2015).  "By making the [agency's] findings and remedy order . . . reviewable by the federal courts of appeals, Congress insured a more uniform interpretation of the WPP and thus a more predictable response to public air safety complaints than would likely be possible if it had granted review in the courts of the fifty states."  *Botz*, 286 F.3d at 497; *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11.

### 3.   Federal Aviation Law Warrants Complete Preemption

As the preceding paragraphs show, federal aviation law shares all the hallmarks that justify the complete preemption doctrine's application to ERISA, as Congress intended to have a single, uniform body of aviation safety law developed through federal expertise, and to further its intent Congress broadly preempted state law on the subject, while providing litigants with a private remedy.  Thus, like ERISA, the FAA as amended and FARS completely preempt state law.

First, Congress enacted ERISA to "provide a uniform regulatory regime" concerning pensions and health plans that creates efficiencies and eliminates "conflicting directives among States and the federal government." *Davila*, 542 U.S. at 208; *McClendon*, 498 U.S. at 144-45. Similarly, Congress enacted the FAA and directed the Administrator to issue safety regulations "to create and enforce one unified system of flight rules" and further the "congressional goal of a uniform system of aviation safety." *Ventress*, 747 F.3d at 722; *Montalvo*, 508 F.3d at 468. With respect to the ADA and WPP, by "fashioning a single, uniform standard for dealing with employee complaints of air-safety violations," Congress intended to eliminate "fragmented and inconsistent state regulations." *Botz*, 286 F.3d at 497; *In re Korean Air, Ltd*, 567 F. Supp. 2d at 1219 (the ADA "maintains uniformity and avoids confusion and burdens that would result if interstate and international airlines were required to respond to standards of individual states").

Second, in passing ERISA, Congress broadly preempted state law and regulation that *relates to* employee pensions and health benefits plans. 29 U.S.C. § 1144(a); *McClendon*, 498 U.S. at 144-45. In virtually identical fashion, Congress preempted state law, including common law claims, that *relate to* an airline's routes and services, and "complaints of air-safety violations. *Morales*, 504 U.S. at 383-84; *Ginsburg*, 134 S. Ct. at 1429-30; *Botz*, 286 F.3d at 497. Thus, because the "relevant language of the ADA is identical [to ERISA]," it is "appropriate to adopt the same standard[.]" *Morales*, 504 U.S. at 383-84. In addition, the breadth of federal aviation preemption is bolstered by the FARs, which the Ninth Circuit has repeatedly explained "***establish complete and thorough safety standards for air travel, which are not subject to supplementation by, or variation among, state laws***." *Montalvo*, 508 F.3d at 472 (emphasis added); *Ventress*, 747 F.3d at 722 ("the FAA, together with the [FARs] promulgated by the Federal Aviation Administration . . . occupies the entire field of aviation safety").

Third, federal aviation law and ERISA share the same dynamic between the scope of preemption and an express statutory remedy. In broadly preempting state law concerning employer sponsored health plans, Congress provided an express statutory remedy. 29 U.S.C. §§ 1132 and 1144(a). Thus, under ERISA, state law claims are completely preempted when the subject matter "relates to" benefits plans, and the plaintiff could have brought his state law claims

under 29 U.S.C. § 1132 (ERISA § 502). *McClendon*, 498 U.S. at 144-45. Similarly, while Congress broadly preempted state law relating to aviation safety, routes, and services, plaintiffs were given a "replacement" claim through the WPP through which airline employees can seek redress for, among other things, retaliation. 49 U.S.C. § 42121. Indeed, the "pre-emptive effect is bolstered by Congress's enactment of the WPP, as the WPP's protections illustrate the types of claims Congress intended the ADA to pre-empt." *Botz*, 286 F.3d at 497.

In *Mattox*, for example, the court noted that under the well-pleaded complaint rule, removal is proper when Congress has "so completely preempt[ed] a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." 897 F.2d at 787. After examining the ADA's express preemption language and legislative history the court explained that the broad language, need for uniformity, and similarities to ERISA and the LMRA, demanded that state law claims are completely preempted. *Id.* Accordingly, the court held "there is federal question jurisdiction." *Id.* at 788-89. The court in *Wright* reached the same conclusion in the context of a common law wrongful termination claim. 2008 U.S. Dist. LEXIS 22329 at *1. The court explained that the FAA as amended by the ADA and WPP "complete preempts any state law claim relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety." *Id.* at *11 (citing 49 U.S.C. § 42121 and *Turgeau*, *supra*). Thus, because "plaintiff's state law claims concerning 'retaliatory discharges in the airline industry based on an employee's reporting of federal safety violations' are preempted[.]" *Id.* at *12. Therefore, just as state law claims are completely preempted under § 514(a) of ERISA if the claims could have been brought under § 502, state law claims are completely preempted under the ADA if they could have been brought under the WPP. *See* 49 U.S.C. §§ 41713 and 42121. *Id.*; *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11; *Turgeau*, 446 F.3d at 1060; *Mattox*, 897 F.2d at 787 (5th Cir. 1990).

Plaintiff's Complaint is completely preempted because the FARs, ADA, and WPP establish that Congress intended the scope of preemption to "entirely replace any state-law claim" concerning aviation safety. *See Retail Property*, 768 F.3d at 947; *Montalvo*, 508 F.3d at 472 (the FARs "establish complete and thorough safety standards for air travel, which are not subject to

supplementation by, or variation among, state laws"). Further, Plaintiff could have brought his claims under the WPP, which was enacted to address the precise issues raised in the Complaint. 49 U.S.C. § 42121; *Botz*, 286 F.3d at 497. Again, the WPP prohibits "discrimination against airline employees" by making it unlawful for an air carrier to "discharge an employee" for raising aviation safety concerns with the employer. 49 U.S.C. § 42121(a)(1). In other words, the WPP is an aviation specific anti-retaliation provision.

Here, Plaintiff has alleged a retaliatory discharge based on his insistence that Allegiant's safety protocol was unlawful under the FARs. Dkt. #1, Ex. 1 ¶ 31, 37. Plaintiff specifically alleges, among other things, that Allegiant was required to operate under the FARs, which impose "a high degree of care" (¶ 4), comply with the FARs concerning "evacuation of an aircraft in the event of . . . any condition that might possibly affect the health and safety of the passengers and crew (¶ 13), that the applicable FARs "have the force and effect of law" (¶ 15), that he acted "in accordance with his regulatory duty" (¶ 18), refused to comply with "unlawful company protocol" concerning safety evacuations (¶ 37), that Allegiant "demanded of the plaintiff" that he "participate in an activity, policy and/or practice of his employer which violate[d] the [FARs] and potentially endangered the lives and limbs of his passengers" (¶ 31), and that he was discharged in a "retaliatory" manner for refusing to comply with Allegiant's alleged demands (*Id.*) and insisting that he acted appropriately in the face of the allegedly unlawful protocol. *Id.* at Ex. 2.

These allegations leave no room for doubt that Plaintiff's claims, such as his First Cause of Action for Wrongful and Tortious Termination of Employment, could have been brought under the WPP. Indeed, while cloaking his claim as one based on state law, Plaintiff explicitly alleges he was retaliated against for opposing an allegedly unlawful aviation safety protocol. This point, coupled with federal preemption of state common law claims concerning aviation safety and Congress's passage of the WPP, establishes that Plaintiff's state law claims are completely preempted. As a consequence, removal was proper, and the Motion for Remand should be denied.

**B.     Plaintiff's Complaint Presents Substantial Federal Questions**

Regardless of whether Plaintiff's claims are completely preempted, jurisdiction is justified under the "substantial federal question" doctrine.  Federal courts recognize "that in certain cases federal question jurisdiction will lie over state law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312.  Thus, "[u]nder the substantial federal question doctrine, a state law cause of action actually arises under federal . . . where the vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Mikulski v. Centerior Energy Corp.*, 435 F.3d 666, 674-75 (6th Cir. 2006); *Calif. ex rel. Lockyer v. Dynergy, Inc*, 375 F.3d 831, 841 (9th Cir. 2004) ("removal jurisdiction lies over a claim to enforce obligations that squarely fall within the exclusive jurisdiction provision of the Natural Gas Act"); *Schaeffer v. Cavallero*, 29 F. Supp. 2d 184, 185 (S.D.N.Y. 1998) ("federal question jurisdiction *does extend* to a state law claim [that] necessarily depends on the resolution of a substantial question of federal law").

Specifically, district courts should consider whether (1) the state law claim necessarily raises federal issues, (2) the federal issues are disputed and substantial, (3) a federal remedy exists, and (4) the interests fairly attribute to the federal court the responsibility to hear the claim. *Grable*, 545 U.S. at 312; *McCready v. White*, 417 F.3d 700 (7th Cir. 2005).  No single factor is dispositive.  *McCready v. White*, 417 F.3d at 702 ("Although [some precedent] might have been read to imply that the existence of a private right of action under federal law is essential to jurisdiction, *Grable* . . . puts the kibosh on that possibility").

In *Grable*, the Court held that removal of a state law claim was justified because the claim implicated a substantial federal question.  Specifically, the state law quiet title action implicated a federal notice of sale statute because the sale was based on delinquent federal taxes.  *Grable*, 545 U.S. at 310.  The Court further held that removal was proper because the plaintiff's claim to superior title turned "on a failure by the IRS to give it adequate notice, as defined by federal law,"

and resolution of federal notice statute was "an essential element that . . . was actually in dispute." *Id.* at 315.  The Court concluded that the Government's "strong interest in the prompt and certain collection of delinquent taxes" established an interest justifying "a federal forum[.]"  *Id.*[5]

Similarly, in *Bailey*, the court denied a motion to remand where the plaintiff argued "he did not specifically plead a federal cause of action – just state tort law claims."  2014 U.S. Dist. LEXIS 42144 *6, JAD-CWH (D. Nev. Mar. 28, 2014).  The court explained that removal of purported state law claims is appropriate where the claim "is necessarily federal in character or where the right to relief depends on the resolution of a substantial, disputed federal question."  *Id.* at *7.  The court thus considered "whether the federal issue [was] 'actually disputed and substantial," noting that in such circumstances "a federal forum may entertain [the claim] without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at *7-8.  Explaining that the plaintiff's claims went "beyond a vague statement about [federal issues]," the court concluded that the allegations were "more than enough . . . to indicate that [his claims were] within this Court's original, federal jurisdiction."  *Id.* *10.

### 1.    Aviation Safety Disputes Belong In Federal Court

Federal courts routinely find that removing aviation disputes to federal court is proper under the substantial federal question doctrine.  *Curtin v. Port Auth.*, 185 F. Supp. 2d 664 (S.D.N.Y. 2005) (denying motion to remand of state law claims where claims implicated questions of FAA safety); *Schaeffer*, 29 F. Supp. 2d at 185 (denying remand because "federal question jurisdiction *does extend* to a state law claim [where] a claimant's right to relief necessarily depends on the resolution of a substantial question of federal law"); *Turgeau v. Admin Review Bd.*, 446 F.3d 1052, 1055 (10th Cir. 2006) (noting appropriate removal and denial of

---

[5]    *See also Los Angeles Police Protective League v. City of Los Angeles*, 314 Fed. Appx. 72 (9th Cir. Dec. 11, 2008) (following *Grable* and affirming district court's denial of remand holding "this court also has 'arising under jurisdiction'" because federal issues were essential to the claims, there was a substantial federal interest, and "extending jurisdiction to this related case will not reasonably disturb "Congress's intended division of labor between state and federal courts"); *Holmes v. Cornerstone Credit Servs.*, 2010 U.S. Dist. LEXIS 44638 (D. AK, May 6, 2010) (denying motion for remand "Holmes' Complaint, although it does not expressly invoke a federal cause of action, requests injunctive relief under the FDCPA, a federal statue. Congress has provided for federal jurisdiction over such enforcement actions").

remand in *Turgeau v. The Nordam Group, Inc.*, 02-CV-965 Dkt. # 15 at 8-12 (N.D. Okla. Apr. 8, 2003) where state law claims were based on aviation safety and whistleblowing issues); *Simonds v. Pan Am*, 2003 U.S. Dist. LEXIS 17328 (D. N.H. Sept. 30, 2003).

In *Curtin*, for example, the defendant removed an action that, on its face, alleged personal injury claims incurred during an emergency flight evacuation. 185 F. Supp. 2d 666. The plaintiff moved for remand, which the court denied after analyzing the issue under *Grable*. The court explained that the complaint raised substantial federal questions that justified removal because the claims were governed by "regulations promulgated under the FAA," and that these regulations "prescribe standards of care" and "an array of specific safety standards." *Id.* at 668. The court further identified the significant federal interests at stake, including safety, uniformity, and efficiency. To protect these interests, the Administration promulgated the pervasive FARs, at Congress's direction, thereby occupying the entire field of aviation safety. *Id.* at 671. Similarly, Congress expressly preempted other aspects of aviation law through the ADA. *Id.* Thus, the court concluded that the "action presents a federal question and removal was proper," even though the plaintiff's claims were packaged as state law claims. *Id.*; *see also Schaeffer*, 29 F. Supp. 2d at 185-88 (denying motion to remand because "federal question jurisdiction *does extend* to a state law claim [where] a claimant's right to relief necessarily depends on the resolution of a substantial question of federal law" and "resort to the federal courts to achieve uniformity in resolving aviation based disputes that "might be inimical to safety").

**2.** **Plaintiff's Complaint Raises Substantial Federal Questions**

Here, the "substantial federal question" factors establish that the Court has subject matter jurisdiction over Plaintiff's Complaint, as (1) his claims raise federal issues that are substantial and disputed, (2) a federal remedy exists for his claims, and (3) the interests at issue should be resolved by the federal courts. *Grable*, 545 U.S. at 312; *McCready*, 417 F.3d 702. Indeed, Plaintiff effectively concedes this point when he alleges that his termination, which was in "retaliation" for raising aviation safety concerns, violated "the public policy" that exists solely "***by reason of the application of the federal aviation regulations that establish a uniform public policy***[.]" Dkt. #1, Ex. 1 ¶ 31 (emphasis added). Not only is Plaintiff seeking to adjudicate

aviation safety issues through common law claims in state court, but he is seeking to have a state court reconstitute federal policy as Nevada policy to broadly regulate airline conduct well beyond the bounds of this lawsuit.  *Id.* ¶ 31 (using a Nevada wrongful termination/policy tort to regulate the safety of airline "passengers and the general public"), ¶ 41(c) (seeking to regulate aviation safety matters concerning "a warning message to the line pilots of Allegiant"), ¶ 45 (using Nevada law to vindicate the "interest[s] of safety and welfare of the public, both flying and on the ground").

First, Plaintiff's claims necessarily raise federal aviation issues that are substantial and disputed.  *Id.*; *see also Ventress*, 747 F.3d at 718-21 (state law claims for retaliation and constructive discharge were preempted under the FAA's aviation safety regulations); *Ginsburg*, 134 S. Ct. at 1430 (holding state law claim for breach of implied covenant of good faith and fair dealing preempted by the ADA).  For decades, federal interests have dominated the fields of aviation safety, routes, and services, as "Congress manifested its intent to rest sole responsibility for supervising the aviation industry with the federal government when it enacted the FAA." *Bailey*, 2015 U.S. Dist. LEXIS 138774 at *6-7.

The federal interests in aviation safety are so paramount that they exclusively occupy the field to the exclusion of state law.  *Ventress*, 747 F.3d at 722.  Specifically, the FARs, promulgated at Congress's direction, demonstrate the federal interest, as federal regulation "occupies the entire field of aviation safety."  *Id.* at 721.  Thus, Congress "clearly indicated its intent to be the sole regulator of this field."  *Id.*  Notably, Plaintiff's Motion cites *Ventress* for the proposition that his claims do not implicate federal aviation law because the FAA does not exclusively "regulate all employment matters involving airmen."  Dkt. #6 at 4:20-25.  While the FAA might not regulate *all* employment matters involving airmen, it does regulate employment matters involving airmen *and* aviation safety based wrongful termination claims.  Indeed, that is *Ventress's* holding: "we conclude that Ventress's state law claims [for "common law retaliation and constructive termination"] are preempted because they require the factfinder to intrude upon

the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating that field."  747 F.3d at 719.

Similarly, the ADA establishes federal interests in promoting airline efficiency, maintaining uniformity, "and avoid[ing] confusion and burdens that would result if . . . airlines were required to respond to standards of individual states."  *Ginsburg*, 134 S. Ct. at 1428-30; *In re Korean Air Lines Co., Ltd*, 567 F. Supp. 2d at 1215.  Accordingly, Congress *expressly* preempted state law, including common law claims that "relate to" a carrier's "prices, routes, or services."  *Ginsburg*, 134 S. Ct. at 1428-30.  This ensures that "States [will] not undo federal deregulation with regulation of their own."  *Id.*  And, through the "WPP's protections," Congress identified specific types of claims that would interfere with these interests in "fashioning a single, uniform standard for dealing with employee complaints of air-safety violations."  *Botz*, 286 F.3d at 497.

Plaintiff's claims cannot be adjudicated without necessarily resolving federal questions concerning the FAA as amended and the FARs.  While Plaintiff argues his claims are based on state law and that "federal regulations have been referenced in the complaint only to reference the [federal] public policy interests that Nevada recognizes," this is plainly not the case.  Dkt. #6 at 5:1-5; Dkt. 1, Ex. 1 (referencing aviation safety's importance to resolving Plaintiff's claims in ¶¶ 12, 13, 14, 18, 21, 24, 27, 30, 31, 37 and 41).  Indeed, the aviation safety "public policy interests" are *federal* law, as Nevada is prohibited from regulating in this field by applying any unique interests beyond those recognized in federal law.  *Montalvo*, 508 F.3d at 468; *Ventress*, 747 F.3d at 722.  Thus, for example, because Plaintiff's "tort claims specifically concern [Allegiant's] ***alleged non-compliance with federal air-safety regulations***," they are  necessarily federal in nature.  *See Wright*, 2008 U.S. Dist. LEXIS 22329 *13 (emphasis added).

But, even if Nevada could regulate through common law claims, Plaintiff concedes the "policy" resolution would still be based on questions of federal law, which Nevada would merely "incorporate" to determine whether Allegiant violated federal law.  *See* Dkt. #6 at 5:1-5; *Montalvo*, 508 F.3d at 468 ("The purpose, history and language of the FAA [demonstrate] Congress intended to have a single, uniform system for regulating aviation safety").  Thus,

Plaintiff's right to a remedy requires that he establish he was complying with federal law.  *See D'Angelo v. Gardner*, 107 Nev. 704, 718, 819 P.2d 206, 216 (1991); *Shen v. Amerco*, 111 Nev. 735, 744, 896 P.2d 469, 457 (1995).

Plaintiff goes far beyond mere "reference" to federal law, citing federal aviation law in approximately 25 of his 26 General Allegations.  Dkt. #1, Ex. 1 ¶¶ 3-28.  From these General Allegations, Plaintiff's specific claims repeatedly invoke aviation safety law.  For example, Plaintiff's wrongful discharge claim is based on allegations that he complied with his *federally prescribed* "command responsibility," opposing unlawful company policies, and retaliated against for not "participat[ing] in an activity, policy and/or practice of his employer which **violate[d] the Federal Aviation Regulations**[.]" *Id.* ¶ 31 (emphasis added).  Similarly, Plaintiff's claim depends on whether he correctly ordered an evacuation pursuant to the FARs, as the Complaint acknowledges Plaintiff was, at least purportedly, terminated for "order[ing] an evacuation that was entirely unwarranted[.]"  Dkt. #1, Ex. 1 at Ex. 2.  Thus, his wrongful termination claim necessarily requires the resolution of "right[s] or immunit[ies] created by the . . . laws of the United States" to  determine whether Allegiant was attempting to force Plaintiff to violate the FARs.  *See* 14 C.F.R. §§ 121.333-557, 91.3; *Lockyer*, 375 F.3d at 838; *Schaeffer*, 29 F. Supp. 2d at 185 (denying remand because "federal question jurisdiction *does extend* to a state law claim [where] a claimant's right to relief necessarily depends on the resolution of a substantial question of federal [aviation] law").[6]

Second, through the WPP, Congress established a federal remedy for claims such as Plaintiff's.  49 U.S.C. § 42121; *Botz*, 286 F.3d at 489 (dismissing state law claims based on aviation safety considerations and the availability of a federal remedy).  The availability of a federal remedy is a significant factor favoring the propriety of removal under the substantial federal question corollary.  *McCready*, 417 F.3d at 702.  But, "when federal law *not only displaces state law* **but also** *confers a federal remedy on the plaintiffs*," removal under the

---

[6]      Plaintiff's defamation claim is also premised on Defendants' alleged "unlawful company protocol," while his claim for intentional infliction of emotional distress requires Plaintiff to affirmatively establish that Defendants "[f]ail[ed] to abide by FAA Rules and Regulations[.]"  Dkt. 1 at Ex. 1 ¶¶ 37 and 41.  Finally, the punitive damages claim is entirely dependent on resolving the parties' rights under the "Federal Aviation Regulations" as they pertain to aviation safety. *Id.* ¶ 44.

substantial federal question doctrine is particularly appropriate. *Harper v. San Diego Trans Corp.*, 764 F.2d 663, 666-67 (9th Cir. 1985); *Holmes*, 2010 U.S. Dist. LEXIS 44638 at *7 (denying motion for remand "despite the fact that all four counts of [the] Complaint were explicitly framed as state law claims" based on repeated references the Fair Debt Collection Practices Act and "the FDCPA prescribes federal jurisdiction for 'an action to enforce any liability created by' the FDCPA").

Here, federal aviation law "not only displaces state law but also confers a federal remedy on [Plaintiff]" under the WPP. *See Harper*, 764 F.2d at 666-67; *Botz*, 286 F.3d at 489 (noting preemptive force of federal aviation safety law and the availability of a federal remedy through the WPP). As detailed above, the preemptive force of federal law "***displace[s] all state law on the subject of air safety***." *Ventress*, 747 F.3d at 722; *French v. Pan Am Express*, 869 F.2d 1, 2 (1st Cir. 1989) (emphasis added); *Ginsburg*, 134 S. Ct. at 1428. Congress specifically enacted the WPP to protect air carrier employees from retaliation based on disputes concerning aviation safety. 49 U.S.C. § 42121. The WPP provides airline personnel with a full spectrum of relief, including, among other things, reinstatement, damages, and back pay, and is exclusively governed by the federal forum. 49 U.S.C. § 42121(b)(1). *Watson*, 2015 U.S. Dist. LEXIS 44436 at *3. Thus, "Congress insured a more uniform interpretation of . . . and thus a more predictable response to . . . air-safety complaints[.]" *Botz*, 286 F.3d at 489; *see Bailey*, 2015 U.S. Dist. LEXIS 13877 at *6-8.

Plaintiff's claims are "the sort of action for which Congress has expressly provided federal jurisdiction" because he has essentially asserted WPP claims. *See Holmes*, 2010 U.S. Dist. LEXIS 44638 *7; *Botz*, 286 F.3d at 489. Again, the WPP is an anti-retaliation remedy designed to protect employees concerned with aviation safety. Although couched in state law, Plaintiff's claims plainly fall within the WPP's scope. As detailed above, in Section III.A.2-3, Plaintiff has effectively asserted a WPP retaliation claim. *See Botz*, 286 F.3d at 489; Dkt. #1, Ex. 1 ¶¶ 31, 44. Congress specifically enacted the WPP to ensure aviation industry employees still had a remedy, despite the broad preemption of state law. *Botz*, 286 F.3d at 489-97. Thus, the second factor to the substantial federal question analysis tips decidedly in Defendants' favor. *See French*, 869

F.2d at 2; *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11.  Together, the federal interests in aviation law and the establishment of a private statutory remedy justify removal of Plaintiff's Complaint.

Third, the Court's resolution of this action will not upset the balance of duties between state and federal courts.  *Grable*, 545 U.S. at 312; *L.A. Police Prot. League*, 314 Fed. App'x. at *75 ("extending jurisdiction to this related case will not reasonably disturb Congress's intended division of labor between state and federal courts").  In *Grable*, for example, the Court explained that because the federal government had a "strong interest in the prompt and certain collection of delinquent taxes," the federal government also had a "direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers may find it valuable to come before judges used to federal tax matters."  *Id.*  The Court therefore concluded that the final consideration – whether the issues justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues – warranted jurisdiction.  *Id.*

Here, the dynamic in *Grable* is easily established.  As detailed above, there is a "paramount" federal interest in aviation safety and deregulation under the FAA, ADA, WPP, and related regulations.  *Montalvo*, 508 F.3d at 468 ("The purpose, history and language of the FAA [demonstrate] Congress intended to have a single, uniform system for regulating aviation safety"); *Ventress*, 747 F.3d at 722 (federal interest demonstrated through the "pervasiveness of federal safety regulations for pilots and the congressional goal of a uniform system of aviation safety"); *Ginsburg*, 134 S. Ct. at 1428 and 1430 (ADA establishes a federal interest in promoting airline efficiency).  The federal interest in aviation safety is so significant that federal law has displaced state law on the subject, while Congress expressly preempted claims relating to routes and services under the ADA.  *French*, 869 F.2d at 2; *Ginsburg*, 134 S. Ct. at 1428.

Further, the FAA issues raised in the Complaint "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.  In keeping with the federal interest in uniformity and utilizing the Administration's aviation expertise Congress expressly entrusted the federal system with resolving claims such as Plaintiff's.  49 U.S.C. § 42121.  Thus, "[b]y making the [administrative] findings and remedy order in response to an employee's complaint reviewable by the federal courts of appeals,

Congress insured a more uniform interpretation of the WPP and thus a more predictable response to public air safety complaints than would likely be possible if it had granted review in the courts of the fifty states.   *Botz*, 286 F.3d at 497; *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11. Accordingly, the final factor also establishes "substantial federal question" jurisdiction.

In sum, all factors identified in *Grable* as being relevant to determining federal jurisdiction over claims presenting substantial federal questions justify Defendants' removal.  The expansive and detailed aviation safety regulations and the need for uniformity of federal law in this area establish a significant federal interest.  Congress has preempted the field of aviation safety and deregulation, while providing a federal replacement remedy through the WPP for claims of retaliation precisely such as those alleged by Plaintiff.  In addition, federal jurisdiction over Plaintiff's claims will not upset the balance Congress has established because Congress has repeatedly indicated aviation safety falls under the expertise of the federal forum.

### C.    Artful Pleading Cannot Divest the Court of Jurisdiction

The artful pleading doctrine is a corollary to the well-pleaded complaint rule that provides, "While the plaintiff can forego federal causes of action in order to avoid removal, a plaintiff cannot avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim" or "by casting in state law terms a claim that can be made only under federal law."  *Olig v. Xanterra Parks Resorts Inc.*, 2013 U.S. Dist. LEXIS 3936904 *6-7 (D. Mont. July 30, 2013) (citing *Harper*, 764 F.2d at 666-67); *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir.2003)); *Holmes*, 2010 U.S. Dist. LEXIS 44638 at *2.  The artful pleading doctrine therefore allows the court to look beyond the express allegations to determine "whether the action plaintiff presents in fact arises under federal law."  *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983) (The court affirmed the dismissals because removal to the district court was proper, based upon the need for interpretation of the Railway Labor Act); *Bailey*, 2014 U.S. Dist. LEXIS 42144 *4-5.

Accordingly, if a plaintiff could have asserted a federal claim based on the allegations of his state law complaint, the court has jurisdiction for removal.  *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court, however, properly looked beyond the

face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction").  A plaintiff may not, however, "avoid federal jurisdiction simply by . . . casting in state law terms a claim that can be made only under federal law.  *Harper*, 764 F.2d at 666-67.  Thus, an "artfully pleaded" complaint asserting state law claims . . . may be recharacterized as one arising under federal law."  *Id.*; *Regents of Univ. of Cal v. Aisen*, 2015 U.S. Dist. LEXIS 147705 (S.D. Cal. Oct. 29, 2015) (denying motion to remand in an artfully pleaded claim fairly arising under Copyright Act's "work-for-hire doctrine"); *Medina v. SEIU – UHC*, 2013 U.S. Dist. LEXIS 87163 (N.D. Cal. June 20, 2013) ("recharacterizing" claim for mandamus relief as a LMRA breach of duty of fair representation claim); *Hernadez v. Creative Concepts*, 2011 U.S. Dist. LEXIS 53973 (D. Nev. May 9, 2011) (denying motion to remand when claims were properly characterized as LMRA § 301); *Bailey*, 2014 U.S. Dist. LEXIS 42145 *6-7 (citing *Schroeder supra*).

Plaintiff's complaint is artfully pleaded "by casting in state law terms a claim that can be made only under federal law."  *Holmes*, 2010 U.S. Dist. LEXIS 44638 at *2.  Specifically, Plaintiff's wrongful discharge claim is, in reality, an AIR21.  Precisely paralleling an AIR21 claim, Plaintiff's wrongful termination claim alleges "the acts and omissions of the defendant . . . toward [Plaintiff] are ***retaliatory in that it essentially demanded of the plaintiff . . . [sic] to participate in an activity, policy and/or practice of his employer which violate the Federal Aviation Regulations and potentially endanger the lives and limbs of his passengers and the general public***."  Dkt. 1, Ex. 1 ¶ 31 (emphasis added).  Plaintiff makes the same basic argument in his intentional infliction of emotional distress and defamation claims, where he alleges harm based on Defendants' alleged failure "to abide by FAA Rules and Regulations" when Defendants supposedly demanded compliance with an "unlawful" safety protocol that endangered the crew and passengers.  *Id.* ¶ 36, 37, 41.  And in his fourth claim, seeking punitive damages, Plaintiff again resorts to an aviation safety "retaliation" theory based on Defendants' alleged "disregard of the Federal Aviation Regulations."  *Id.* ¶ 44.

These are disguised WPP claims purporting to intrude on a preempted field where state law claims are not permissible.  *See Wright*, 2008 U.S. Dist. LEXIS 22329 at *11-12.  The WPP

expressly prohibits an air carrier from "discharging or otherwise discriminating against an employee because he or she" raised safety regulation violation concerns with the employer. 49 U.S.C. § 42121(a). As the preceding paragraph shows, aviation safety and retaliation are the crux of Plaintiff's Complaint. Dkt. 1, Ex. 1, ¶ 31 and at Ex. 2 (characterizing Defendants' position that Plaintiff violated his federal regulatory duties and was terminated for insisting he acted appropriately, while claiming Defendants were "essentially demand[ing] . . . plaintiff participate in . . . a practice of his employer which violate[d] the Federal Aviation Regulations"). Thus, Plaintiff has tried to circumvent his federal remedy through state law claims that do not exist as a matter of law. For jurisdictional purposes, the Court should therefore recharacterize the purported state law claims as claims arising under federal law. *See Schroeder*, 702 F.2d at 191.

Plaintiff therefore has not merely elected to pursue state law claims instead of federal claims. Indeed, Plaintiff has no state law claims because the FAA, ADA, and related regulations displace state law, while AIR21 provides Plaintiff with a federal "replacement" remedy. *French*, 869 F.2d at 2 (Congress displaced state law concerning aviation safety); *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11 ("Congress intended to preempt state law claims concerning alleged violations of federal air-safety regulations and through the WPP provided a replacement cause of action for such claims"). This is a flagrant violation of the artful pleading doctrine.

## IV.   **CONCLUSION**

Based on the foregoing argument, federal jurisdiction is proper under the complete preemption, substantial federal question, and/or artful pleading corollaries to the well-pleaded complaint rule. Plaintiff's Motion should therefore be denied.

Dated this 30th day of December, 2015.

JACKSON LEWIS P.C.

_____/s/ Steven C. Anderson_____
Veronica Arechederra Hall, Bar No. 5855
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 30th day of December, 2015, I caused to be served via the Court's CM/ECF Filing, a true and correct copy of the above foregoing **DEFENDANTS' OPPOSITION TO MOTION FOR REMAND** properly addressed to the following:

Michael A. Urban
Sean W. McDonald
THE URBAN LAW FIRM
4270 S. Decatur Blvd., Ste. A-9
Las Vegas, Nevada 89103

*Attorneys for Plaintiff*

_____/s/ Emily Santiago_____
Employee of Jackson Lewis P.C.

4814-9747-7420, v.  1