MICHAEL J. PANGIA, ESQ.
D.C. Bar No. 967182
(Will comply with LCR IA 10-2 by Jan. 26, 2016)
**THE PANGIA LAW GROUP**
1717 N St NW, Suite 300
Washington, D.C. 20036
T: (202) 955-6153
F: (202) 393-1725
mpangia@pangialaw.com

**THE URBAN LAW FIRM**
MICHAEL A. URBAN, Nevada Bar No. 3875
SEAN W. McDONALD, Nevada Bar No. 12817
4270 S. Decatur Blvd., Suite A-9
Las Vegas, Nevada 89103
T: (702) 968-8087
F: (702) 968-8088
murban@theurbanlawfirm.com
smcdonald@theurbanlawfirm.com
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JASON KINZER, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>ALLEGIANT AIR, LLC, a Nevada limited liability company; and ALLEGIANT TRAVEL CO., a Nevada corporation,<br><br>Defendants. | Case No. 2:15-cv-02306-JAD-PAL<br><br>**RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff, Captain Jason Kinzer ("Captain Kinzer"), by and through counsel, hereby files his response in opposition to Defendants' Motion to Dismiss (Doc. 9). Plaintiff respectfully requests that this Court deny Defendants' Allegiant Air, LLCs and Allegiant Travel Co.'s ("Allegiant Air" or "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of his opposition, Plaintiff states as follows:

1

I.     **Factual and Procedural History**

    A.     **Facts**

On June 8, 2015, Captain Kinzer was pilot in command of Allegiant Air Flight 864. The flight was scheduled to go from St. Petersburg, Florida to Hagerstown, Maryland. Immediately after takeoff the flight attendants reported smoke and a burning smell to Captain Kinzer. *See* Compl., Doc. 1, at 24:5–8. Captain Kinzer declared an emergency and returned to St. Petersburg. *Id.* When Captain Kinzer returned to the St. Petersburg airport, a voice over the radio confirmed "Yeah there's fire." *Id.* at 24:13. The smoke and fumes in the passenger cabin persisted as the aircraft was being inspected by Crash, Fire and Rescue on the ground at St. Petersburg. *Id.* at 23:4–25:22. Rather than risk the health and lives of his passengers and crew, as well as his own life, Captain Kinzer, after concurrence by his second officer, ordered an evacuation from the environment of fumes, smoke and potential fire.

On July 23, 2015, Allegiant discharged Captain Kinzer for failing to operate his "aircraft safely, smoothly and efficiently and striving to preserve the Company's assets, aircraft, ground equipment, fuel and the personal time of our employees and customers." *Id.* at 31 (termination letter attached to Complaint). Importantly, Plaintiff has made no allegation or complaint that Allegiant's conduct prior to or during the evacuation violated the Federal Aviation Regulations (FARs). Instead, the gravamen of Plaintiff's complaint is that Allegiant dismissed Captain Kinzer for refusing to continue to work under conditions that were unreasonably dangerous to himself, his crew, and his passengers. As Allegiant stated in its termination letter, "during a review of the event and in subsequent conversations you have repeatedly insisted that you made a good decision to evacuate the aircraft and, if faced with a similar situation, you would follow the same course of action." *Id.*

At this stage of the case, it is unclear which corporate entity, Allegiant Air, LLC, or Allegiant Travel Co., issued the termination letter to Captain Kinzer. One issue not in dispute is that the insistence of an employer that its employee continue working or exposing others to remain in an unreasonably dangerous area is a clear violation of Nevada public policy for which an employer can be held liable for tortious discharge.

B.   **Procedural History**

Plaintiff filed his complaint in the Eighth Judicial District Court in Clark County, Nevada. The Defendants removed the case to this Court purportedly on the basis of federal question jurisdiction, citing 49 U.S.C. § 40103 *et seq*. as the basis for the federal question. Notice of Removal, Doc. 1-1. Defendants now argue that since the complaint makes numerous references to the Federal Aviation Regulations ("FARs"), there must be federal question jurisdiction. As will be shown below, the mere reference to federal law does not create a federal question. What is more to the point is the fact that the Defendants fail to demonstrate how this state law cause of action is inconsistent with or frustrates the intent of the FARs.

II.   **Law and Argument**

A.   **Introduction**

No federal question is presented in this matter.[1] As such, this Court lacks jurisdiction over this proceeding since no federal question is presented on the face of the Plaintiff's complaint. This case should therefore be remanded, and the motion to dismiss for failure to state a claim should be handled by the state court that has clear jurisdiction over this case.

B.   **Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint on its face. *Hillcrest Investments, Ltd. v. Robison*, No. 2:15-cv-01509-GMN-VCF, 2015 WL 7573198, at *1 (D. Nev. Nov. 24, 2015). The complaint need not contain detailed factual allegations but must simply be "plausible on its face" in order to survive a 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only a "short and plain statement of the claim showing that the pleader is entitled to relief" is necessary to demonstrate

---

[1] As Plaintiff noted in his motion to remand (Doc. 6), the party seeking removal bears the burden of demonstrating the federal court has jurisdiction. *See California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005). Since the lack of that jurisdiction would render all decrees void and the continuance of litigation futile, the removal statute is to be strictly construed and all doubts resolved in favor of remand.

3

on what grounds that claim rests. *Twombly*, 550 U.S. at 555. The ruling on a defendant's motion does not require "detailed factual allegations to pass muster under 12(b)(6) consideration," but only requires that the court accept all factual allegations as true and resolve ambiguities in favor of the plaintiff, giving him the benefit of every reasonable inference from the well-pleaded facts and allegations in the complaint. *World Chess Museum, Inc. v. World Chess Fed'n, Inc.,* No. 2:13-cv-00345-RCJ, 2013 WL 5663091, at *1 (D. Nev. Oct. 15, 2013). Captain Kinzer has sufficiently alleged factual allegations to maintain an action for tortious discharge, defamation, intentional infliction of emotional distress, and for punitive damages under Nevada state law.

### C. Plaintiff's State Law Claims

#### 1. Tortious Discharge

Nevada has a well-established exception to the employment-at-will doctrine. The exception to the general rule of employment at will is for "tortious discharge." A "tortious discharge" occurs when an employer terminates a worker in violation of a strong public policy. *Bigelow v. Bullard*, 111 Nev. 1178, 1185, 901 P.2d 630, 634 (1995) (noting that "When an employer dismisses an employee for the employee's performing or refusing to perform public policy-favored actions, then an action for tortious discharge arises." (citing *D'Angelo v. Gardner*, 107 Nev. 704, 718, 819 P.2d 206, 216 (1991))). The public policy of not forcing workers to expose themselves to dangerous conditions has been recognized as supporting a cause of action for tortious discharge. The Nevada Supreme Court has specifically held "that dismissal of an employee for seeking a safe and healthy working environment is contrary to the public policy of this state." *D'Angelo*, 107 Nev. at 719, 819 P.2d at 216.

*D'Angelo* involved two consolidated cases, *D'Angelo v. Gardner* and *Western States v. Jones*. In the *Western States* case, a jury found that *Western States* attempted to force Jones to be exposed to cyanide in violation of his doctor's instructions as well as the company's safety policy. *Id*. at 714–16, 819 P.2d at 213–14 (1991). The facts in the *Western States* portion of *D'Angelo* supported a jury verdict of tortious discharge for Jones. *Id*. at 722, 819 P.2d at 218. In the case at bar, Plaintiff has alleged sufficient facts to support that Captain Kinzer was fired for his unwillingness to subject himself and others, for whose safety he was legally responsible, to

noxious fumes and potential fire in an enclosed structure—be it a building, boat, airplane, or coal mine. The case should be remanded for a state court jury to determine whether Allegiant violated Nevada public policy by terminating Captain Kinzer for his commitment to evacuate from an environment of smoke and fumes and potential fire, from an unknown source, which posed a threat to him, his crew and passengers. The fact that the complaint references FARs that reiterate the Plaintiff's basic and common sense responsibility for the safety of those around him, as well as training responsibilities of the Defendants, does not elevate his employment law matter into a federal case.

As discussed below, Captain Kinzer has no other remedy for his tortious discharge, other than his state common law claim. No comprehensive statutory remedy exists for the civil wrong committed against Captain Kinzer. Notably, as Captain Kinzer is not aware of any violation of the FARs or other federal law, there can be no whistleblower cause of action. Captain Kinzer's sole remedy for his discharge therefore lies with his state common law cause of action.

Captain Kinzer's common law claim for tortious discharge includes allegations that Allegiant's conduct towards him was "malicious, retaliatory and in a reckless disregard of his rights." Doc. 1 at 17:22. Evidence of "malicious intent" is all that is required to support an award of punitive damages concerning tortious discharge. *D'Angelo*, 107 Nev. at 723, 819 P.2d at 219. Plaintiff has properly pleaded a cause of action for punitive damages. The case should now be remanded to allow Captain Kinzer to marshal the evidence to prove his case.

   **2.    Plaintiff's state law claims of defamation, intentional infliction of emotional distress, and for punitive damages have all been properly pleaded.**

Plaintiff has alleged a proper claim under Nevada state law for defamation. The Defendants correctly cite the case of *Clark County School District v. Virtual Education Software, Inc.*, 125 Nev. 374, 213 P.3d 496 (2009), for the elements of a defamation cause of action. The *Clark* court articulated the standard as follows:

> An action for defamation requires the plaintiff to prove four elements: "(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope*, 121 Nev. at 315, 114 P.3d at 282; *see Lubin v. Kunin*, 117 Nev. 107,

5

> 111, 17 P.3d 422, 425 (2001). However, if the defamatory communication imputes a "person's lack of fitness for trade, business, or profession," or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed. *K–Mart Corporation*, 109 Nev. at 1192, 866 P.2d at 282.

*Clark Cty. Sch. Dist.*, 125 Nev. at 385, 213 P.3d at 503. Plaintiff has met the pleading standard as required by *Clark*.

In his complaint, Plaintiff has alleged all of the required elements of the Nevada common law tort of defamation. Paragraph 35 of the complaint alleges a false statement made by the Defendants. Doc. 1 at 16. Paragraph 36 of the complaint alleges that the statement was provided to an unprivileged third person—namely Greg Baden. *Id.* Paragraph 37 of the complaint specifically alleges that the "publication . . . was at least negligent and may have in fact been an intentional" act. *Id.* As a result of the false publication of the letter, damages have also been alleged in paragraphs 38 and 39 of the complaint, but damages would be presumed since the termination letter essentially accuses Captain Kinzer of being an incompetent pilot. *Id.* at 16, 31. Far exceeding the requirements of *Iqbal* and *Twombly* as well as Rule 8, Plaintiff has provided actual evidence of what transpired aboard the aircraft—not in terms of mere allegations—but with actual evidence of the ground control transcript.[2] The transcript provides evidence of the reasonableness of Captain Kinzer's decision to evacuate the plane. *Id.* at 20–29. By contrast, the Allegiant letter terminating Captain Kinzer's employment, read in the light most favorable to the non-moving party, accuses Captain Kinzer of being a subpar pilot. At this stage of the pleadings, the Plaintiff's claims are strong enough with the evidence in the record to withstand a motion for summary judgment. Plaintiff has definitely stated a claim under the Rule 12(b)(6) standard.

The focus of Defendants' Rule 12(b)(6) motion, concerning the defamation count of the complaint, focuses on the issue of privilege. As a preliminary matter, the claims of privilege are affirmative defenses—for which the Defendants bear the burden of proof. No proof of the

---

[2] Plaintiff is unsure why Defendants cite *New Show Studios LLC v. Needle*, No. 2:14-cv-01250-CAS, 2014 WL 2988271 (C.D. Cal. June 30, 2014). The Court in *New Show* made it clear that it was not dismissing the Plaintiff's defamation claim. *Id.* at *15 (noting that "As explained above, however, the Court does not reach the merits of defendants' Anti–SLAPP motion, and thus declines to strike plaintiffs' claim for defamation at this time.").

privilege defenses has been presented at this stage of the pleadings, as the Defendants have not answered the complaint, nor filed any affidavits in support of their affirmative defenses. For this reason alone, the Defendants' motion to dismiss for a failure to state a claim should be denied. As the defamation counts are purely state common law causes of action, the case should be remanded to the state court where it originated.

Even if the Court were to consider the proposed affirmative defenses described by the Defendants in their motion to dismiss, the Court should still remand this action. The potential affirmative defenses mentioned in the Defendants' motion to dismiss rely on law other than Nevada's—or otherwise do not apply to the facts of this case. The case of *Cox v. Galazin*, 460 F. Supp. 2d 380 (D. Conn. 2006), is not a Nevada case as represented by Defendants, but in fact from Connecticut. The qualified privilege dealt with in *Cox* was for a public figure, namely an elected local union president. Cox was held to be a public figure, and did not meet his summary judgment burden of proving actual malice. *Id.* at 389–90. Neither the Plaintiff nor the Defendants have contended that Captain Kinzer was a public figure. Thus, the public figure privilege does not apply to the facts of this case. Neither does the "supervisory authority" privilege found in *Spitzmessser v. Tate Snyder Kimsey Architects, Ltd.*, No. 2:10-cv-01700-KJD-LRL, at *13–14 (D. Nev. June 27, 2011). The *Spitzmesser* plaintiff attempted to bring a defamation action concerning statements made by his former employee to the Nevada State Board of Architecture. The *Spitzmesser* court dismissed the defamation complaint on the grounds that "statements made in quasi-judicial proceedings" are absolutely privileged under Nevada law. *Id*. at 7. In the case at bar, there are no quasi-judicial proceedings. The letter the Defendants sent was to the Plaintiff— and not to any type of regulatory body. The privilege does not apply—and Defendants' motion must be denied, with the case being remanded to the state court.

Plaintiff's claims of defamation and tortious discharge are also sufficient to support a claim for intentional infliction of emotional distress. The essence of Plaintiff's claim is Defendants' action will prevent him from ever being able to work in the aviation industry again. Doc. 1 at 17, ¶ 38. Under the cases cited by the Defendants, such alleged intentional conduct

meets all of the required pleading standards and supports the Plaintiff's claims for punitive damages as well.

### D. Defendants' Claims of Implied Preemption—Let Me Count The Ways

#### 1. Defendant's claim of field preemption is incorrect.

The Defendants claim that reference to federal regulations in the complaint makes the cause of action arise "under the Constitution, laws, or treaties of the United States," 28 U.S.C. §§ 1331, 1441(b), and thus removable without regard to the citizenship or residence of the parties. In the absence of an express preemption clause, courts should not ordinarily infer that Congress intended to overturn state law. *See Wyeth v. Levine*, 555 U.S. 555, 573–76 (2009) (concluding, in preemption analysis, federal and state law causes of action coexist under federal Food, Drug & Cosmetic Act).

In the case of *Eastman v. Marine Mechanical Corporation*, 438 F.3d 544, 549–54 (6th Cir. 2006), citing in agreement *Campbell v. Aerospace Corp.*, 123 F.3d 1308 (9th Cir. 1997), the Sixth Circuit held that the plaintiff's state-law employment claim alleging wrongful discharge in violation of federal public policy did not "raise a substantial federal question over which federal courts may exercise original or removal jurisdiction, because accepting such cases would be inconsistent with the congressional judgment about the sound division of labor between the state and federal courts concerning the application of 28 U.S.C. § 1331." *Eastman*, 438 F.3d at 546 (citing *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). The Supreme Court in *Grable* made it quite clear that federal question jurisdiction requires not only a contested federal issue, but a substantial one. *Grable & Sons*, 545 U.S. at 313. Federal question jurisdiction must be consistent with congressional judgment about the sound division of labor between state and federal courts governing Section 1331's application. *Id.* at 313–14. No such "substantial" federal interest is present in this case.

#### 2. Defendants' claim of preemption, based on references to the FARs, misapprehends the facts of the case.

The reference to FARs in the instant case does not call those regulations into dispute. Nor does it encroach upon, supplement, or alter the federally-occupied field of aviation safety or

present an obstacle to the FAA's goals. The complaint references FARs with respect to Defendants' training duties and Captain Kinzer's general responsibilities as a pilot; the references are clearly within the framework of common sense. The Defendants fail to point out how the FAA's goals of air safety would be inconsistent with or frustrated by this state court action. In that respect, the case of *Gibson v. Cellular Sales of Knoxville*, No. 12-591-DLB-HBG, 2013 U.S. Dist. LEXIS 99131 (E.D. Tenn. July 15, 2013), is instructive in that it involved a set of facts that parallel the facts in the instant case. In *Gibson*, the plaintiff was an airline pilot who was fired because he exercised his duty under the FARs in refusing to operate his aircraft onto a runway that he felt was too short. *Id.* at *2–3. He brought an action for wrongful discharge under state law, *id.* at *1, just as Captain Kinzer did in the instant case under Nevada law. The defendant removed the case to the federal court under the premise that it involved a substantial federal question because of the involvement of the FARs. *Id.* at *9. The plaintiff moved for a remand. *Id.* at *3. In granting the remand, the *Gibson* court noted that Congress does not view the FAR as embodying a substantial federal question. *Id. at* *12–15. Quoting *Eastman*, the *Gibson* court noted that "a state-law employment action for wrongful termination in violation of federal public policy does not present a substantial federal question over which federal courts may exercise 'arising under' jurisdiction under 28 U.S.C. § 1331." *Id.* at *15 (quoting *Eastman*, 438 F.3d at 553 (6th Cir. 2006)). The *Gibson* court therefore granted the motion for remand. For the reasons discussed above and in *Gibson*, the Court should reach the same conclusion here.

      **3.**     **Defendants' claims of preemption under the Airline Deregulation Act (ADA) have been rejected by the Ninth Circuit.**

Defendants cite the Eighth Circuit case of *Botz v. Omni Air International*, 286 F.3d 488 (8th Cir. 2002), for the proposition that the Airline Deregulation Act (ADA) preempts a state law based employment claim. The Defendants avoid mentioning the Ninth Circuit, in the case of *Ventress v. Japan Airlines*, 603 F.3d 676 (9th Cir. 2010) ("*Ventress II*"), *expressly rejected* the reasoning in *Botz* and agreed with the Third Circuit that "*Botz* went too far in expanding ADA preemption." 603 F.3d at 683 (quoting *Gray v. The Air Group, Inc.*, 397 F.3d 183, 190 (3d Cir. 2005)). The *Ventress II* Court made it quite clear that:

> We agree with the Eleventh and Third Circuit's conclusion that the WPP did not alter ADA preemption and that "the operative question remains whether the state law claim is related to airline prices, routes, or services." We reach this conclusion in part because we are mindful that "preemption should not be lightly inferred" in areas such as employment law that are traditionally within the police powers of the states.

*Id.* at 683 (internal citations omitted).

On remand, the *Ventress* case was eventually dismissed on the pleadings because the remaining claim involved the application of medical standards and qualifications that are exclusively regulated by very specific FARs. *Ventress v. Japan Airlines*, 747 F.3d 716, 721–22 (9th Cir. 2014) ("*Ventress III*"). That claim would have obviously required the court to "encroach upon, supplement or alter the federally occupied field of aviation safety." *Id.* at 722. However, the *Ventress III* Court cautioned:

> In reaching this conclusion, *we need not, and do not, suggest that the FAA preempts all retaliation and constructive termination claims brought under [state] law*. Indeed, we recognize that Congress has not occupied the field of employment law in the aviation context and that the FAA does not confer upon the agency the exclusive power to regulate all employment matters involving airmen.

*Id.* at 722–23 (emphasis added).

The Ninth Circuit's reasoning is not unique. The ADA expressly preempts any states from "enact[ing] or enforc[ing] any law, rule, regulation, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier." 49 U.S.C. § 41713. Interpreting this provision, the United States Supreme Court has focused its preemption analysis on whether a state law "relates to" air carrier "services." *See Morales v. TWA*, 504 U.S. 374 (1992). The Eleventh Circuit, in the case of *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir. 2003), adopted the Fifth Circuit's definition, defining "services" as follows:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another . . . . Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between passenger or shipper and the airline. It is these [contractual] features of transportation that we believe Congress

intended to de-regulate as "services" and broadly protect from state regulation.

Id. at 1256–57 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)) (bracketed alteration in original).

The Eleventh Circuit concluded the ADA's phrase "'related to the . . . services of an air carrier' means having a connection with or reference to the elements of air travel that are bargained for by passengers with the air carriers." *Id*. at 1258. This definition includes the physical transportation of passengers as well as the incidents of that transportation over which air carriers compete. *Id*. at 1258–59. The Defendants here have not shown how an evacuation from a dangerous area can be the source competition between airlines that falls within the definition of "services" comprehended by the ADA. The Defendants cannot plausibly claim Captain Kinzer's decision to extricate himself and others from a potentially lethal environment of smoke, toxic fumes, and potential fire encroaches upon, supplements, or alters a federally-occupied field or presents an obstacle to Congress's goal to create a single, uniform system of air safety.

### 4. Defendants' claims of preemption under the Whistleblower Protection Program (WPP) are factually inapposite.

There is no private right of action under the ADA or the FARs in this case. The *Eastman* Court noted, "Moreover, Congress' withholding a private right of action from these statutes is an important signal to its view of the substantiality of the federal question involved," pointing out that the Supreme Court observed with respect to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*:

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

*Eastman*, 438 F.3d at 552 (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986)).

The Defendants are suggesting to this Court that the Whistleblower Protection Program, 49 U.S.C. § 42121 ("WPP"), completely preempts state employment law by providing the only

remedy to Captain Kinzer in this circumstance. First of all, complete preemption requires a finding that the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986). Secondly, even the most strained reading of the WPP does not encompass the facts of this case. The WPP is quite clear in its application to four specific situations: when an employee (1) is providing or about to provide to an employer information regarding a violation; (2) has filed, caused, or is about to file a proceeding relating to a violation; (3) testified or is about to testify in such a proceeding, or (4) assisted or participated, or is about to assist, in such a proceeding. 49 U.S.C. § 42141(a). Captain Kinzer's actions do not even come close to falling within the wording of this statute. Captain Kinzer never insinuated, planned, assisted in, or threatened to report violations, and there is no reference in his complaint to such activity on his part.

The interpretation of 49 U.S.C. § 42141 that Defendant relies on is misplaced for the facts of this case. The statute specifically provides that:

> No air carrier or subcontractor of an air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . —
> (1) *provided, caused to be provided, or is about to provide* (with any knowledge of the employer) *or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety* under this subtitle or any other law of the United States;
> (2) *has filed, caused to be filed, or is about to file* (with any knowledge of the employer) *or cause to be filed a proceeding* relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States;
> (3) *testified or is about to testify in such a proceeding*; or
> (4) *assisted or participated or is about to assist* or participate in such a proceeding.

49 U.S.C. § 42141(a) (emphasis added).

The plain language of the statute requires that the discharge occur because an employee provides, causes to be provided, or is about to provide information regarding regulatory

information to the FAA or Federal Government. Notwithstanding the lack of its preemptive effect in the area of state employment law, the requisite facts to consider the application of the WPP are neither existent nor pleaded in this case. Moreover, the Ninth Circuit in *Williams v. United Airlines, Inc.*, 500 F.3d 1019 (9th Cir. 2007), reiterated that the WPP does not create an express or implied private right of action in the federal district court. *Id.* at 1021–25; *accord Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1260–64 (11th Cir. 2003) (concluding WPP did not change preemption analysis under the ADA). From the face of the complaint, Plaintiff's allegations do not come close to fitting within the framework of the WPP. Accordingly, for this reason, the motion to dismiss should be denied.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss should be denied, the case remanded, and the Plaintiff allowed to proceed with his case on the merits in state court.

Dated this 6th day of January, 2016.

>
> MICHAEL J. PANGIA, ESQ.
> D.C. Bar No. 967182
> (Will comply with LCR IA 10-2 by Jan. 26, 2016)
> **THE PANGIA LAW GROUP**
> 1717 N St NW, Suite 300
> Washington, D.C. 20036
> T: (202) 955-6153
> F: (202) 393-1725
> mpangia@pangialaw.com
>
> **THE URBAN LAW FIRM**
>
> By:      */s/ Sean W. McDonald*
> MICHAEL A. URBAN, Nevada Bar No. 3875
> SEAN W. McDONALD, Nevada Bar No. 12817
> 4270 S. Decatur Blvd., Suite A-9
> Las Vegas, Nevada 89103
> T: (702) 968-8087
> F: (702) 968-8088
> murban@theurbanlawfirm.com
> smcdonald@theurbanlawfirm.com
>
> *Counsel for Plaintiff*

63866

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of January, 2016, I electronically filed the foregoing **RESPONSE TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael A Urban murban@theurbanlawfirm.com, RSchleiker@theurbanlawfirm.com, adenni@theurbanlawfirm.com, kopenbrier@theurbanlawfirm.com, nring@theurbanlawfirm.com, pcotsonis@theurbanlawfirm.com, smcdonald@theurbanlawfirm.com, vhernquist@theurbanlawfirm.com

Veronica Arechederra-Hall veronica.hall@jacksonlewis.com, LasVegasDocketing@JacksonLewis.com, janine.martin@jacksonlewis.com, karen.michelini@jacksonlewis.com

Steven C Anderson steven.anderson@jacksonlewis.com, christar@jacksonlewis.com, karen.michelini@jacksonlewis.com, lasvegasdocketing@jacksonlewis.com, santiagoe@jacksonlewis.com

Sean W. McDonald smcdonald@theurbanlawfirm.com, efiling@theurbanlawfirm.com

and I hereby certify that have mailed by United States Postal Service the document to the following non-CM/ECF participants:

[none]

                               */s/ Sean W. McDonald*
                               An Employee of The Urban Law Firm

63866