Veronica Arechederra Hall, Bar No. 5855
veronica.hall@jacksonlewis.com
Steven C. Anderson, Bar No. 11901
steven.anderson@jacksonlewis.com
**JACKSON LEWIS P.C.**
3800 Howard Hughes Pkwy, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JASON KINZER, an individual,

Plaintiff,

v.

ALLEGIANT AIR, LLC, a Nevada limited
liability company; and ALLEGIANT
TRAVEL CO. a Nevada corporation,

Defendants.

Case No. 2:15-cv-2306-JAD-PAL

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## I.   INTRODUCTION

Plaintiff's Complaint should be dismissed for several independent reasons.  Defendants' Motion to Dismiss ("Motion") describes these reasons at length.  For example, the Motion details how Plaintiff's claims are based on aviation safety disputes.  The Federal Aviation Regulations ("FARs"), however, occupy the entire field of aviation safety to the exclusion of state law.  Thus, Plaintiff's state law claims are not viable.  Similarly, the Airline Deregulation Act ("ADA") provides an independent basis for dismissal.  The ADA expressly preempts state common law claims that concern an airline's operations.  Plaintiff's allegations demonstrate how he re-routed and grounded a flight.  His claims therefore relate to, or concern, Allegiant's routes and services. Because federal law preempts state law in this area, Plaintiff's common claims cannot stand.

This is not to say Plaintiff had no remedy in the face of federal preemption of his state law claims.  Notably, however, federal law can preempt state law claims without providing a federal remedy.  But here, Congress enacted the Whistleblower Protection Program ("WPP"), which is an

anti-retaliation statute applicable to airline industry personnel, and circumstances just like those alleged in the Complaint.  The WPP provides an administrative remedy, complete with backpay and reinstatement remedies that can be enforced in the federal courts.  Plaintiff could have pursued a WPP claim, but failed to do so.  Now, the limitations period for a WPP claim has lapsed.

The Opposition reads as if the Motion does not exist.  As a consequence, the majority of the Opposition is simply not responsive to the Motion's arguments described above.  For example, Plaintiff miscomprehends the nature and effect of "defensive" or "ordinary" preemption, on one hand, and "complete" or "jurisdictional" preemption, on the other hand.  Defendants' Motion is based on defensive or ordinary preemption, which serves as a basis for dismissal in state *or* federal court.  Complete or jurisdictional preemption, however, is a concept that justifies removal and establishes federal jurisdiction.  The Opposition repeatedly, and incorrectly, responds to the Motion's *defensive* preemption arguments with *jurisdictional* preemption arguments.  But complete or jurisdictional preemption is not at issue in Defendants' Motion.  Rather, complete or jurisdictional preemption is at issue in the briefing concerning Plaintiff's Motion for Remand.  Plaintiff's failure to acknowledge this distinction renders much of the Opposition irrelevant.

The Opposition also fails to redeem Plaintiff's claims because it ignores controlling law on aviation safety preemption, conflates defensive preemption based on *aviation safety* law with defensive preemption under the *ADA*, and ignores explicit language in his Complaint where he alleges Allegiant violated the FARs, imposed an "unlawful company protocol" with which Plaintiff refused to comply, and retaliated against him.  Plaintiff's claims are thus squarely within the fields of aviation law preempted by Congress and for which the WPP was designed.  Plaintiff cannot avoid these facts and the law.  Accordingly, his claims should be dismissed with prejudice.

## II.    LAW AND ARGUMENT

### A.    DEFENSIVE PREEMPTION AND DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

*Complete* preemption is a *jurisdictional* concept distinct from *defensive* preemption. *Retail Prop. Trust v. United Bhd. of Carp'trs & Jointers of Am.*, 768 F.3d 938, 946-47 (9th Cir.

2014) ("complete preemption is really a jurisdictional rather than a preemption doctrine").  As the Court recognized in *Bailey v. City Atty's Office of N. Las Vegas*, complete preemption and the related doctrines of "artful pleading" and "substantial federal question" are jurisdictional concepts that apply to disputes over removal and remand.  Case No. 2:13-cv-343-JAD-CWH, 2014 U.S. Dist. LEXIS 42144 *6 (D. Nev. Mar. 28, 2014).  When these doctrines apply, a claim that purports on its face to be based on state law will be construed as a claim arising under federal law for jurisdictional purposes and may be properly removed to federal court.  *Id.* at *6-10; *Assc'd Bldrs & Contrs. v. Local 302 IBEW*, 109 F.3d 1353, 1356 (9th Cir. 1997).

*Defensive* or *ordinary* preemption, on the other hand, effectively "blots out" state laws as they relate to the preempted subject area because federal law occupies the entire field to the exclusion of state law.  *See Parrino v. FHP, Inc.*, 146 F.3d 669, 704 n. 2 (9th Cir. 1998); *Bruneau v. FDIC*, 981 F.2d 175, 179 (5th Cir. 1992).  In other words, defensive or ordinary preemption bars the application of state law and applies in *either* state or federal court.  *See e.g., State v. Reliant Energy, Inc.*, 128 Nev. Adv. Rep. 46, 289 P.3d 1186, 1192 (2012) ("the district court was correct to dismiss this case, as appellants' claims are barred by federal field preemption" because even though "this conclusion fails to provide redress for our citizens . . . Congress has afforded no room for the imposition of state-law requirements, [and] federal preemption bars this action").

Unlike its jurisdictional counterpart (complete preemption), defensive preemption does not establish federal question jurisdiction.  Thus, for example, in *Holman v. Laulo-Rowe Agency*, the Ninth Circuit explained that the Federal Crop Insurance Act provided a *defense* to the state law claims of negligence and bad faith, but the defense did not convert such claims into federal claims for purposes of removal jurisdiction.  994 F.2d 666, 669 (9th Cir. 1993).  Similarly, in *Ventress v. Japan Airlines* (*Ventress III*), the Ninth Circuit applied *defensive* preemption to affirm the district court's dismissal of the plaintiff's *state law* claims for retaliation and constructive discharge.  747 F.3d 716, 719 (9th Cir. 2014).  Because defensive preemption was at issue, *Ventress* simply does not address complete or jurisdictional preemption.  *Id.*

For purposes of the instant Motion, preemption is used defensively.  Defendants' Motion seeks dismissal of the Complaint because federal aviation law prohibits states from enacting

legislation or regulations, or applying the common law to issues concerning aviation safety or that relate to airline's routes or services.   Dkt. #9 at 5:1-13:5; *Ventress III*, 747 F.3d at 719-22 (dismissing "state law claims a[s] preempted because they require the factfinder to intrude upon the federally occupied field of aviation safety); *Northwest Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014) (dismissal of state law claims as preempted under the ADA).  The Motion simply does not concern removal, remand, or federal question jurisdiction.   As further described below, the Opposition repeatedly responds to the Motion's *defensive* preemption arguments with *complete* preemption arguments.  Thus, Plaintiff has failed to show that his state law claims are actionable.

### B.   THE FEDERALLY OCCUPIED FIELD OF AVIATION SAFETY PREEMPTS PLAINTIFF'S STATE COMMON LAW CLAIMS

#### 1.   Federal Aviation Safety Law Preempts Plaintiff's Claims

Congress can preempt state law.  *See* U.S. Const. Art. VI, Cl. 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).  When federal law preempts state law, the state law is void and unenforceable.  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (affirming dismissal of failure to warn claims on preemption grounds).   Like state statutes or regulations, common law claims implicating a preempted area of law "fail as a matter of law," thereby subjecting the claims to dismissal under Rule 12(b)(6).  *Id.* at 474; *Ginsberg*, 134 S. Ct. at 1429. As noted above, this concept is referred to as *defensive/ordinary* preemption.   Again, this defensive or ordinary preemption should not be confused with complete preemption, which "is really a jurisdictional rather than a preemption doctrine."  *Prop. Trust*, 768 F.3d at 946-47; *Montalvo*, 508 F.3d at 471; *Ventress III*, 747 F.3d at 719 (applying defensive preemption).

As the Motion explains in detail, Congress enacted the FAA "to create and enforce one unified system of flight rules."  Dkt. #9 at 5:19-9:22; *Montalvo*, 508 F.3d at 471-72.  The FAA also created the Federal Aviation Administration ("Administration") and authorized the

promulgation of aviation safety regulations (the FARs).  Dkt. #9 at 5:19-9:22; *Montalvo*, 508 F.3d at 471-72.  Thus, Congress demonstrated its "***preemptive intent to displace all state law on the subject of air safety***."  *Montalvo*, 508 F.3d at 472 (emphasis added).[1]

The Motion further established that Plaintiff's state law claims are "little more than backdoor challenges to [Allegiant's] safety-related decisions," as Plaintiff's claims contest Allegiant's actions with respect to the handling of emergency protocols, evacuations, and safety-based decisionmaking.  *See Ventress III*, 747 F.3d at 722.  State common law claims, however, ***cannot*** be used to supplement or vary federal aviation law, which is precisely what Plaintiff's Complaint seeks to do.  He seeks to apply Nevada law to scrutinize Allegiant's handling of a serious aviation safety scenario involving the FARs, federally regulated emergency protocols, and Plaintiff's decisionmaking, which directly led to passenger injuries.  Dkt. #1 at Ex. 1 and Ex. 2 attached thereto; *Montalvo*, 508 F.3d at 472; *Ventress III*, 747 F.3d at 719.

## 2.    The Opposition's Arguments are Baseless

The Opposition flatly ignores or miscomprehends these points.  Instead of responding to *defensive* preemption based on federal aviation safety law, Plaintiff contends this action was improperly *removed*, and that his reference to FARs in the Complaint does not call those regulations into dispute or "encroach upon, supplement, or alter the federally-occupied field of aviation safety[.]"  Dkt. #18 at 8:3-9:1.  These arguments are misplaced, incorrect, and irrelevant.

First, Plaintiff argues that this action is not removable under 28 U.S.C. §§ 1331 and 1441(b).  *Id.* at 8:3-9.  Plaintiff then cites to "well-pleaded complaint" considerations and the "complete preemption" doctrine.  *Id.* at 8:12-24.  For example, Plaintiff cites *Gibson v. Cellular Sales of Knoxville*, 2013 U.S. Dist. LEXIS 99131 (E.D. Tenn. July 15, 2013) for the proposition

---

[1]    *See also French v. Pan Am Express*, 869 F.2d 1, 4 (1st Cir. 1989) ("The regulations promulgated by the Secretary under the Act bulwark our finding that Congress intended to occupy the field of . . . air safety"); *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010) ("Based on the FAA's purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA, we conclude that federal regulation occupies the field of aviation safety to the exclusion of state regulations"); *Frank v. Delta Airlines, Inc.*, 314 F.3d 195 (5th Cir. 2002) (holding state law negligence claim should have been dismissed as preempted under the FAA's safety provisions); *Curtin*, 183 F. Supp. 2d at 666.

1    that his claims do not present issues of "substantial federal questions."  Dkt. #18 at 9:5-19.

2    Analogizing his case to *Gibson*, Plaintiff concludes that because *Gibson* "granted the motion for

3    remand" on similar facts, the "Court should reach the same conclusion here."  *Id.*

4         But Defendants' Motion seeks dismissal based on defensive/ordinary preemption.  This is

5    not a motion for remand, as the parties have already separately briefed those jurisdictional issues.

6    Dkt. #6, 16, 19.  Defensive preemption is not dependent on federal jurisdiction, or whether the

7    claims are deemed to "arise under" federal law.  Motions to dismiss on defensive preemption

8    grounds may be resolved in "state *or* federal court," and justify dismissal when Congress has

9    displaced state-law requirements.  *Reliant Energy, Inc.*, 128 Nev. Adv. Rep. 46, 289 P.3d at 1192

10   (holding "the district court was correct to dismiss this case, as appellants' claims are barred by

11   federal field preemption"); *Parrino*, 146 F.3d at 704 n. 2; *Bruneau v. FDIC*, 981 F.2d at 179.

12        Relying on jurisdictional law that is plainly inapplicable, Plaintiff has entirely ignored

13   controlling precedent on federal aviation safety law and defensive preemption.  The Ninth Circuit

14   has made clear that federal law preempts state law on issues of aviation safety.  *Montalvo*, 508

15   F.3d at 472; *Ventress III*, 747 F.3d at 719.  In *Montalvo*, the court explained, "The FAA, together

16   with federal air safety regulations, establish complete and thorough safety standards for interstate

17   and international air transportation that are not subject to supplementation by, or variation among,

18   states."  508 F.3d at 474.  Because the plaintiff's claims were based on the common law, which

19   the court explained could not supplement federal law, the claims "fail[ed] as a matter of law."  *Id.*

20        And, in an opinion squarely on point, the Ninth Circuit explained that the "Administration

21   is the sole regulator of this field."  *Ventress III*, 747 F.3d at 721.  This decision is particularly

22   noteworthy because it involved a pilot who had been terminated, and who brought common law

23   claims of wrongful discharge and retaliation against the airline.  *Id.* at 719.  Applying *Montalvo's*

24   principles, *Ventress III* identified that the plaintiff's claims implicated aviation safety by being

25   dependent on FAA "certificates" and "standards."  *Id.*  The court concluded that the "FAA and

26

27

28

Jackson Lewis P.C.
Las Vegas

accompanying [regulations] preempt Ventress's retaliation and constructive termination claims . . . because they require the factfinder to intrude upon the federally occupied field of aviation safety[.]"  *Id.* at 719.  This is precisely what Plaintiff is seeking to do, as he attempts to impose state law on emergency flight safety subjects governed by federal law.

Second, without addressing these decisions or citing *any law*, Plaintiff summarily concludes that the Complaint's reference to FARs does not "call those regulations into dispute" and does not "encroach upon, supplement, or alter the federally-occupied field of aviation safety or present an obstacle to the FAA's goals."  Dkt. #18 at 8:27-9:1.  Similarly, Plaintiff contends he was "not aware of any violation of the FARs or other federal law."  *Id.* at 5:9-10.  A simple reference to the Complaint dispels this argument.  Indeed, Plaintiff's contention is remarkable and inexplicable considering the Complaint expressly alleges Plaintiff's termination was "retaliatory" and based on his refusal to "***participate in an activity, policy and/or practice of his employer which violate [sic] the Federal Aviation Regulations***."  Dkt. #1, Ex. 1 ¶ 31 (emphasis added).  Plaintiff also alleges he was terminated for refusing to comply with a supposed "***unlawful company protocol***," made unlawful by the FARs.  *Id.* ¶ 37.  Plaintiff further alleges his "retaliatory" discharge was in "reckless disregard of" the FARs and "***the high degree of a duty of due care with which [Allegiant] is charged [under the FARs] for the safety of the public***."  *Id.* ¶ 44; Dkt. #9 at 7:20-9:22 (emphasis added).  Thus, Plaintiff's argument that his claims do not "encroach upon, supplement, or alter the federally-occupied field of aviation safety" and that he is "not aware of any violation of the FARs or other federal law" is disingenuous at best, and belied by his own allegations in the Complaint.  *See* Dkt. #18 at 5:9-10, 8:27-9:1.

In sum, just as in *Ventress III*, Plaintiff's common law claims based on retaliation and tortious discharge are "little more than backdoor challenges to [the airline's] safety-related decisions regarding" the plaintiff's "operati[on] [of] a civil aircraft."  747 F.3d at 722.  And, just as in *Ventress III*, Plaintiff's suit concerns "questions of [aviation safety]," including standards of care imposed by the FARs.  *Id.*  Thus, by the Complaint's express allegations, Plaintiff cannot prevail on a Nevada common law claim unless the factfinder determines Allegiant violated "Federal Aviation Regulations and the high degree of a duty of due care with which it is charged

[under the FARs] for the safety of the public."  Dkt. #1 at Ex. 1 ¶ 44.  Such determinations are strictly forbidden.  *Ventress III*, 747 F.3d at 719 (holding state law claims were preempted because they "require[d] the factfinder to intrude upon the federally occupied field of aviation safety").  As a consequence, the Complaint should be dismissed.

## C.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE AIRLINE DEREGULATION ACT

In addition to the FAA's implied preemption over aviation safety law, the ADA expressly preempts state law that "relates to" or "concerns" an airline's decisions on prices, routes, or services.  *Ginsberg*, 134 S. Ct. at 1429.  As fully explained in the Motion at 9:23-13:5, the Supreme Court has addressed the ADA's preemptive scope in three opinions.  *Id.* at 1431 (holding the ADA preempted state law claim "connected to the airline's rates"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (ADA pre-empted "the use of state consumer protection laws to regulate airline advertising"); *Airlines Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995) (holding the ADA preempted claims based on state Consumer Fraud Act).[2]  These opinions make clear that ADA preemption is "deliberately expansive" and preempts state law, including common law claims, that have "a connection with, or reference to, airline rates, routes, or services."  *Morales*, 504 U.S. at 383-84; *Ginsberg*, 134 S. Ct. at 1428-30. Thus, in *Wolens*, the Court explained that the preemptive "ban is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean ***States may not seek to impose their own public policies . . . or regulations on the operations of an air carrier***."  *Wolens*, 513 U.S. at 229 n. 5 (emphasis added).

Plaintiff's claims unquestionably seek to impose Nevada law and policy on the "operations of" Allegiant.  *See id.*  His claims "relate to," "concern," or "have a connection with" Allegiant's routes because he is claiming he was wrongly terminated for *rerouting* a plane in mid-flight and grounding the plane. Dkt. #1, Ex. 1 ¶ 9; *Simonds v. PAN AM*, 2003 U.S. Dist. LEXIS 17328 *14 (D. N.H. Sept. 30, 2003) (holding common law claims preempted under the ADA where the employee's conduct "threatened to ground a plane").  In doing so, he "compromised the

---

[2]    Plaintiff cites *Morales* for the proposition that the ADA preemption analysis focuses on "services." Dkt. #18 at 10:18-21.  This is not accurate.  In holding that the ADA preempted state laws on deceptive trade practices, the Court made clear that the preemption analysis applies equally to "rates" and "routes," and reached its holding based on the state law's relation to "rates."  504 U.S. at 383-84.

safety of [his] crew and [his] passengers and led directly to [passenger] injuries," thereby affecting Allegiant's services.  Dkt. #1 at Ex. 2 to Ex. 1.  In fact, Plaintiff specifically alleges he was terminated for failing to take "into consideration the Company assets and ***rescheduling costs*** before making such decisions," which obviously concern rates and services.  *Id.* at Ex. 2. (emphasis added).  The Opposition fails to redeem Plaintiff's claim from this analysis.

First, the Opposition conflates *aviation safety preemption* under the FARs with the *ADA's preemption* of claims that "relate to" or "concern" an airline's "prices, routes, and services."  For example, Plaintiff cites *Ventress III*, *supra*, under the Opposition's heading, "Defendants' claims of preemption under the ADA have been rejected by the Ninth Circuit."  Dkt. #18 at 9:20-21.  But *Ventress III* concerned "the federally occupied field of aviation safety," ***not the ADA***.  747 F.3d at 719.[3]  Similarly, the Opposition's ADA discussion concludes, "Captain Kinzer's decision to extricate himself and others from a potentially lethal environment of smoke" does not concern the "federally-occupied field or present[] an obstacle to Congress's goal to create a single, uniform system of air safety."  Dkt. #18 at 11:10-13.  This assertion, however, is simply not applicable to an ADA preemption analysis.  It concerns aviation safety, which is impliedly preempted under the FARs.  *Montalvo*, 508 F.3d at 472 (implied preemption of state aviation-safety law under FARs). The ADA expressly preempts state laws that "relate to" prices, routes, or services.  *Ginsberg*, 134 S. Ct. at 1429 (dismissing common law claims concerning rates, routes, or services under ADA).

Second, Plaintiff identifies *Ventress v. Japan Airlines (Ventress II)*, 603 F.3d 676 (2010) for the proposition that *Botz v. Omni Air Int'l* (cited in the Motion) applied an overly expansive view of ADA preemption.[4]  Dkt. #18 at 9:22-28.  *Ventress II*, however, is not applicable because it was decided in 2010, and in 2014, the Supreme Court's *Ginsberg* decision unanimously reversed the Ninth Circuit's application of ADA preemption, employed in *Ventress II*, as being

---

[3]        Further, Plaintiff fails to recognize that in *Ventress III*, the Ninth Circuit *affirmed* the district court's dismissal of a *former pilot's* common law claims for *wrongful discharge* and *retaliation* based on defensive preemption under federal aviation-safety law.  *Id.* at 722.

[4]        *Ventress II* concerned preemption of the former pilot's common law claims under the ADA.  The Ninth Circuit ruled the ADA did not preempt his claims.  603 F.3d at 684.  In *Ventress III*, however, the Ninth Circuit reconsidered dismissal of the pilot's same common law claims on federal aviation safety preemption grounds and affirmed the district court's decision that the common law claims were preempted.  747 F.3d at 721-22.

too strict. *Ginsberg*, 134 S. Ct. at 1433-34 ("The judgment of the Court of Appeals for the Ninth Circuit is reversed"). In reversing, *Ginsberg* reiterated that Supreme Court precedent established a "broad interpretation of the ADA preemption provision" and "state common-law rules fall comfortably within the language of the ADA preemption provision." *Id.* at 1428-29.

Regardless, *Ventress II*, plainly acknowledges, as it must, that the ADA preempts state law if the claims "relate to" or "concern" routes, routes, or services. *Ventress II*, 603 F.3d at 681. There, the court only addressed ADA preemption in the context of *services*, not *routes*. *Id.* at 682. The court explained the former pilot claimed he was retaliated against because he threatened to "pull himself off *future* flights" if his concerns were not addressed. *Id.* at 683 (emphasis added). The court concluded that "*the record does not indicate that he grounded or had the potential to ground a flight. Ventress therefore did not interrupt service.*" *Id.* (emphasis added).

Thus, *Ventress II* deemed the fact that a flight had not actually been disrupted as dispositive. Unlike *Ventress II*, Plaintiff unquestionably "interrupted service," as he ordered an emergency landing and grounded the plane. Further, unlike in *Ventress II*, Allegiant argues Plaintiff's conduct and claims also "relate to" the airline's *routes*. Indeed, Plaintiff re-routed a plane destined to Hagerstown, Maryland, and landed in St. Petersburg airport. Dkt. #1 at Ex.1 ¶¶ 9, 18. Thus, in addition to being independently preempted the FARs, Plaintiff's claims are preempted by the ADA. In seeking to impose Nevada law and policy on Allegiant's operations, Plaintiff's claims squarely fall under the ADA's field of express preemption. *See Wolens*, 513 U.S. at 229 n. 5. As a consequence, his claims must be dismissed.

### D.   PLAINTIFF HAS FORGONE HIS FEDERAL ADMINISTRATIVE REMEDY

Notwithstanding the preemption of his common law claims under federal aviation safety law and/or the ADA, Plaintiff could have pursued a full remedy through the FAA/ADA Whistleblower Protection Program. The WPP is an anti-retaliation *administrative* remedy enforceable in federal court. 49 U.S.C. § 42121(a)-(b). Plaintiff should have, but has not pursued this remedy. He is now time-barred from doing so. *See* 49 U.S.C. § 42121(b) (WPP claims must be raised within 90 days of the alleged violation). This action should therefore be dismissed with

prejudice, because Plaintiff's claims are preempted **and** he failed to file a timely WPP claim.  *See*

*Wright v. Nordam Group, Inc.*, 2008 U.S. Dist. LEXIS 22329 *3-11 (N.D. Okl. Mar. 20, 2008)

(dismissing "wrongful discharge" claim with prejudice because employee failed to exhaust his

administrative remedies under the WPP).  The Opposition does not address these points.  Rather,

Plaintiff mischaracterizes and misconstrues the WPP's characteristics and purpose.

Initially, Plaintiff misunderstands the WPP's fundamental characteristics.  *See* 49 U.S.C. §

42121.  Plaintiff states, "There is no private right of action under the ADA or the FARs in this

case," suggesting complete preemption does not apply to his claims.  Dkt. #18 at 11:16-26.

Plaintiff then argues the WPP is irrelevant because "complete preemption requires a finding that

the federal statutes at issue provided the exclusive cause of action for the claim asserted."  *Id.* at

12:1-4 (citing *Merrell Dow Inc. v. Thompson*, 478 U.S. 804 (1986)).[5]  But as explained above,

this argument is not responsive to the Motion.  Here, federal subject matter jurisdiction and

complete preemption are not relevant to a motion to dismiss.  Relatedly, Plaintiff's assertion that

he has "no private right of action" does nothing to avoid dismissal pursuant to *defensive*

preemption.  As the Nevada Supreme Court explained in affirming the district court's dismissal of

state law claims, "While this conclusion fails to provide redress for our citizens . . . Congress has

afforded no room for the imposition of state-law requirements, [and] federal preemption bars this

action."  *Reliant Energy Inc.*, 289 P.3d at 1192.  Thus, a private right of action is not particularly

relevant.

For present purposes, rather, the WPP is notable for two reasons.[6]  First, as indicated by

the language in *Reliant Energy*, courts often hesitate to apply even *defensive* preemption to state

law claims if doing so will leave the claimant without a remedy.  Here, while Plaintiff's common

---

[5]     Although irrelevant for present purposes, Plaintiff drastically overstates *Merrell Dow Pharm.*, as
the Supreme Court's jurisprudence unequivocally holds that a private right of action ***is not necessary*** for a
finding of complete preemption.  *See* Dkt. #16.

[6]     As further explained in the Motion, the WPP is not a separate basis for dismissal based on
*defensive* preemption.  Rather, the WPP is an administrative remedy for airline industry personnel who
believe they incurred an adverse employment action for reporting or refusing aviation safety violations or
refusing to engage in conduct contrary to the FARs.  *See* 49 U.S.C. § 42121.  Not all conduct made
unlawful under the WPP is necessarily preempted.  But, if the subject of the claims falls within the
preemptive purview of aviation safety or the ADA, the claims will be preempted.  In such cases, an
employee *will not* be left without a remedy, because the WPP authorizes a full spectrum of remedies.

law claims are preempted under federal aviation safety law and/or the ADA, Congress did not leave airline personnel without a remedy.  The WPP provides a full spectrum of relief through an administrative proceeding enforceable in the federal courts.  49 U.S.C. § 42121; Dkt. #9 at 13:23-15:3.  Second, the Motion identifies the WPP to demonstrate that while Plaintiff could have brought an administrative claim, he failed to do so.  Dkt. #9 at 15:3-13.  As a consequence, dismissal of his claims with prejudice should follow, as it would be a final adjudication on the merits.  *Wright*, 2008 U.S. Dist. LEXIS 22329 at *3-11 (dismissing "wrongful discharge" claim with prejudice because employee failed to exhaust his administrative remedies under the WPP).

Next, Plaintiff mischaracterizes the WPP's breadth.  The WPP plainly states that it applies to an airline employee who "provided . . . ***or is about to provide*** (with any knowledge of the employer) ***the employer or*** Federal Government information relating to any violation or alleged violation" of federal aviation law.  42 U.S.C. § 42121(a) (emphasis added).  Yet the Opposition claims, "The plain language of the statute requires that the discharge occur because an employee provides . . . or is about to provide information regarding regulatory information to ***the FAA or Federal Government***."  Dkt. #18 at 12:27-13:1.  Thus, conspicuously absent from Plaintiff's representation is that the WPP applies to communications with the *employer*.  42 U.S.C. § 42121.

The Complaint unequivocally alleges Allegiant "retaliated" against Plaintiff because Plaintiff justified his actions by claiming he complied with the FARs and that Allegiant's practices were in violation of the FARs.  Dkt. #1 at Ex. 1 ¶ 31 (alleging Plaintiff was retaliated against for refusing to "participate in an activity, policy and/or practice of his employer which violate [sic] the Federal Aviation Regulations"), ¶ 37 (alleging Plaintiff objected to an "unlawful company protocol"), ¶ 44 (alleging Allegiant acted in "reckless disregard of the Federal Aviation Regulations and the high degree of a duty of due care with which [Allegiant] is charged [under the FARs] for the safety of the public").  This meets the requirements of 42 U.S.C. § 42121(a), as the WPP "provides a remedy for employees of air carriers . . . who allege retaliation based on the employer's alleged violation or alleged violation of federal air-safety regulations.  *Wright*, 2008 U.S. Dist. LEXIS 22329 at *3-11

Finally, the Opposition states on multiple occasions that the WPP is not relevant because it is not a "private right of action." Dkt. #18 at 11:16, 13:1-9.[7]  For example, Plaintiff cites *Williams v. United Airlines, Inc.*, 500 F.3d 1019 (9th Cir. 2007) to establish that the WPP "does not create an express or implied private right of action in the federal district court."  Dkt. #18 at 13:1-9.  Plaintiff is correct.  In fact, Allegiant's Motion states: "The WPP ***does not*** provide employees with a private right of action . . ."  Dkt. #9 at 13:12-13 (emphasis added).  The Motion continues, ". . . but [the WPP] does provide them with an administrative remedy appealable to the federal courts."  *Id.*  Plaintiff, however, fails to recognize that, while not a private right of action, the WPP provides complete relief, including reinstatement and backpay, through an *administrative remedy*.  49 U.S.C. § 42121(b)(1).[8]  Regardless, Plaintiff's assertion is irrelevant, as a private right of action is not a prerequisite to defensive preemption.  *Reliant Energy Inc.*, 289 P.3d at 1192.

Further, Defendants do not argue the WPP preempts Plaintiff's claims.  Rather, the FARs and/or ADA preempt his claims.  In preempting state law claims, however, Congress enacted the WPP as a "replacement" claim.  *Wright*, 2008 U.S. Dist. LEXIS 22329 at *11.  The WPP is designed to address the precise concerns Plaintiff raised in his Complaint.  *See id.*  If Plaintiff had timely acted, he could have administratively pursued the claims and enforced or appealed the determination in the federal courts.  Plaintiff was terminated in July 2015, but did not file his Complaint until November 10, 2015.  Thus, over 100 days lapsed between his termination and this action's initiation.  This exceeds the 90 day administrative limitations period.  49 U.S.C. § 42121(b).  Thus, the Court should not only dismiss the Complaint, but dismiss it with prejudice.

---

[7]    Presumably, Plaintiff makes this argument in furtherance of his position that the WPP does not establish "complete preemption."  Again, complete, *i.e.*, jurisdictional, preemption is not at issue for purposes of dismissal under Rule 12(b)(6).

[8]    To clarify, a "private right of action" gives an individual the right to pursue his or her claims directly before the courts. *See Watson v. Air Methods Corp.*, 2015 U.S. Dist. LEXIS 44436 *3 (E.D. Mo. Apr. 6, 2015); *Williams*, 500 F.3d at 1020-24.  An administrative remedy, on the other hand, requires the individual to proceed and exhaust remedies with an administrative body before the individual can proceed to the courts. *See, e.g.*, 49 U.S.C. § 42121(b).

E.      PLAINTIFF'S REMAINING ARGUMENTS

1.      **Nevada Does Not Recognize A Policy On Aviation Safety**

As with defensive preemption discussed above, the Opposition does not respond to the Motion's arguments concerning Plaintiff's wrongful discharge claims.  The Motion explained that Nevada does not have a public policy prohibiting terminating an at-will employee based on compliance or non-compliance with the FAA or FARs.  *Borodkin v. Omni Air. Int'l*, 279 Fed. Appx. 517 (9th Cir. May 22, 2008) (affirming summary judgment to airline where plaintiff alleged violation of FAA drug and alcohol testing protocol because Nevada had no such public policy interest).  Indeed, the Complaint inadvertently acknowledges this point when it alleges Allegiant's conduct violated "the public policy of all states including the State of Nevada, particularly by reason of the application of the Federal Aviation Regulations *that establish a uniform public policy to be recognized by all states*[.]"  Dkt. #1 at Ex. 1 ¶ 32 (emphasis added). This allegation concedes that *federal law* controls his claim.   The mere fact that Nevada recognizes a federal law, as it must, does not transform the federal law into a state policy.

Further, Nevada policy has no place under Plaintiff's allegations because "States may not seek to impose their own public policies . . . or regulations on the operations of an air carrier." *Wolens*, 513 U.S. at 229.  Thus, to the extent Nevada has established a "public policy of not forcing workers to expose themselves to dangerous conditions," Nevada has not and cannot extend it to issues concerning aviation safety and Allegiant's operations.  *Id.*  Instead, Plaintiff should have pursued a remedy under the WPP.  This is consistent with Nevada law, because even if defensive preemption did not eliminate the purported policy, Nevada will not recognize a public policy tort if the plaintiff had a "comprehensive" remedy available.  *Shoen v. Amerco*, 111 Nev. 735, 744, 896 P.2d 469, 457 (1995); *Sands Regent v. Valgardson*, 105 Nev. 456, 777 P.2d 900 (1989).  In describing what constitutes a comprehensive remedy, the Nevada Supreme Court explained that the statute should authorize reinstatement, backpay, and damages.  *Shoen*, 111 Nev. at 744, 896 P.2d at 457.  The WPP meets these requirements because the relief includes abatement, reinstatement, and damages.  42 U.S.C. § 42121(b)(3)(B)(i)-(iii).

Instead of addressing these points, the Opposition merely restates the arguments the Motion anticipated and disposed of concerning Nevada's policy based discharge claims, which is summarized in the preceding paragraphs of this Reply Brief.  Plaintiff further argues, "The fact that the complaint references FARs that reiterate the Plaintiff's basic and common sense responsibility for the safety of those around him, as well as training responsibilities of the Defendants, does not elevate his employment law matter into a federal case." Dkt. #18 at 5:5-8.  Here again, Plaintiff fails to distinguish between *jurisdictional* preemption and *defensive* preemption.  Defendants' Motion does not argue the Complaint's reference to the FARs makes this a "federal case."  Defendants' argument is that Plaintiff's wrongful discharge claim does not and cannot invoke a Nevada policy.  Dkt. #9 at 15:17-16:13; *Wolens*, 513 U.S. at 229 n. 5.  This decision could be reached in state or federal court.  *Reliant Energy Inc.*, 289 P.3d at 1192.

Finally, Plaintiff argues that he would be left without a remedy if Nevada did not have a policy prohibiting such terminations.  Dkt. #18 at 5:9-10.  First, this argument does not change the analysis because defensive preemption (the reason why Nevada cannot have a policy concerning aviation law) does not depend on the availability of a remedy.  *Reliant Energy*, 289 P.3d at 1192; *Ventress III*, 747 F.3d at 719.  Second, the assertion is simply wrong.  Plaintiff could have and should have asserted an administrative claim pursuant to the WPP.  29 U.S.C. § 42121.  As explained numerous times in the Motion and this Reply, the Complaint alleges that Allegiant *retaliated* against Plaintiff for opposing "unlawful company protocols" and acted in "reckless disregard" of the FARs.[9]  Thus, Plaintiff's argument that he "is not aware of any violation of the FARs or other federal law," so there "can be no whistleblower cause of action" is plainly disingenuous.  Dkt. #18 at 5:9-13.

## 2.    Plaintiff Has Not Identified a Defamatory Statement or Publication.

Plaintiff's Second Cause of Action for Defamation should be dismissed because he fails to allege that any particular statement is false and defamatory and fails to allege sufficient facts to

---

[9]    Dkt. #1 at Ex. 1 ¶ 31 (alleging Plaintiff was retaliated against for refusing to "participate in an activity, policy and/or practice of his employer which violate [sic] the Federal Aviation Regulations"), ¶ 37 (alleging Plaintiff objected to an "unlawful company protocol"), ¶ 44 (alleging Allegiant acted in "reckless disregard of the Federal Aviation Regulations and the high degree of a duty of due care with which [Allegiant] is charged [under the FARs] for the safety of the public").

assess whether the unidentified statements were published without privilege.  *Clark County Sch. Dist. v. Virtual Educ.*, 125 Nev. 374, 385, 213 P.3d 496, 503 (2009).  "Whether a statement is defamatory is generally a question of law." *Lubin v. Kunin*, 117 Nev. 107, 112, 17 P.3d 422, 427 (2001).  The Opposition makes several arguments, but ignores the dispositive issues.

First, Plaintiff argues Paragraph 35 identifies the defamatory language.  Dkt. #18 at 6:6-8. This paragraph, however, merely claims that the "discharge letter" and "other writings . . . contain false and defamatory statements."  Of the letter's seven sentences, the Complaint makes no effort to identify the supposed false statements.  *See* Dkt. #1, Ex. 2 to Ex. 1.  The Opposition editorializes about the supposed defamatory statement, but that does not change the fact that the Complaint is insufficient under the *Iqbal/Twombly* standard.  *Iqbal*, 556 at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  Indeed, "[e]ven under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient."  *New Show Studios*, 2014 U.S. Dist. LEXIS 90656 *41.

Second, the Complaint summarily concludes that the communication to Greg Baden, Allegiant's Vice President of Flight Operations was not privileged.  Dkt. #1, Ex. 1 ¶ 36.  The Motion explained in detail that this communication cannot qualify as a publication as a matter of law under the "intra-corporate communication doctrine."  Dkt. #9 at 17:10-18:7.  The privilege makes communications among a corporation's management immune to defamation claims.  *Id.*; *see* Dobbs et al., THE LAW OF TORTS at 185 ("the 'contemporary view' is that intra-office communications do count as publications, but are protected by a qualified privilege, which allows an employee to recover only if the employer abuses the privilege").

Curiously, despite the Motion's focus on the intra-corporate communication doctrine, the Opposition addresses other immunities or exceptions, such as "the public figure privilege," "quasi-judicial proceeding privilege," ***but ignores the intra-corporate doctrine and the fact that the communication was made by Mr. Grock, Allegiant's System Chief Pilot, and published to***

*Mr. Baden, Allegiant's VP of Flight Operations*.  Dkt. #1, Ex. 2 to Ex. 1.  Thus, for the reasons more fully stated in the Motion, the Complaint cannot state a defamation claim because the alleged defamatory statement was not published to a third party.[10]

### 3.    Plaintiff Has Not Sufficiently Alleged Extreme and Outrageous Conduct

The Motion establishes the elements to an adequately pleaded claim of intentional infliction of emotional distress and explains why the Complaint fails to meet this standard.  Dkt. #9 at 18:10-19:25.  Plaintiff's only response consists of three sentences:

> Plaintiff's claims of defamation and tortious discharge are also sufficient to support a claim for intentional infliction of emotion distress.  The essence of Plaintiff's claim is Defendants' actions will prevent him from ever being able to work in the aviation industry again.  Under the cases cited by the Defendants, such alleged intentional conduct meets all of the required pleading standards[.]

Dkt. #18 at 7:24-8:1.  Plaintiff cites no case law and does not expound on this point.

As argued in the Motion, the supposed "extreme and outrageous" acts must "exceed all bounds of decency" and be "regarded as utterly intolerable."  *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372, 281 Cal. Rptr. 242 (1991); *De Los Reyes v. Southwest Gas Corp.*, 2007 U.S. Dist. LEXIS 57421 *11 (D. Nev. Aug. 2, 2007).  ***Terminating an employee's employment does not meet this standard***.  *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

As a consequence, the Opposition's conclusory argument that "under the cases cited by the Defendants, [Plaintiff's] alleged intentional conduct meets all of the required pleading standards" fails to explain why or how his claim can survive Rule 12(b)(6) scrutiny in light of the Motion or cited case law.  Plaintiff is wrong.  Even if his allegations are accepted as true, he has not alleged how or why Allegiant's conduct was "utterly intolerable" or "exceeded all bounds of decency."  Nothing in the Complaint or Opposition sets Plaintiff's allegations apart from those in *McDaniel*, *De Los Reyes*, or *Alam*.  As a consequence Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

---

[10]    Plaintiff also argues that a privilege or immunity, such as the intra-corporate doctrine, is an affirmative defense that cannot be determined at this state of the litigation because Defendants have not answered the Complaint.  Dkt. #18 at 6:23-7:3.  This argument is nonsense.  Courts routinely dismiss claims through Rule 12(b)(6) motions based on "affirmative defenses."  For example, courts dismiss claims based on statutes of limitations.

### 4.    "Punitive Damages" is Not an Independent Claim

There is no such thing as a claim for "punitive damages."  *Lund v. J.C. Penney*, 911 F. Supp. 442, 445 (1996) ("Defendant points out, correctly, that punitive damages are a remedy, not a cause of action"); *Waltman v. Fahnestock & Co*., 792 F. Supp. 31, 33 (E.D. Pa. 1992) ("punitive damages are a remedy, not a cause of action").  The Opposition merely argues that Plaintiff's claims for tortious discharge and defamation "support the Plaintiff's claims for punitive damages as well."  Dkt. #18 at 7:24-8:2.  To the extent Plaintiff is arguing that theoretically, he could recover punitive damages if he prevails on one of his other claims, he is correct.  *Waltman*, 792 F. Supp. at 33.  The stand-alone claim for punitive damages, however, must be dismissed, and Plaintiff fails to establish otherwise.

### F.    ALLEGIANT TRAVEL CO. IS NOT A PROPER PARTY

Allegiant Air, LLC was Plaintiff's employer, not Allegiant Travel Co.  Dkt. #9 at 21:4-22:10; *see* Dkt. #10.  The Opposition does not dispute this point, but only states, "At this stage of the litigation, it is unclear which corporate entity, Allegiant Air, LLC, or Allegiant Travel Co., issued the termination letter."  Dkt. #18 at 2:24-25.  The letter Plaintiff references was sent to Plaintiff by Allegiant Air, LLC's Mark Grock.  *See* Dkt. #1 at Ex. 2 to Ex. 1 (denoting Mark Grock as "System Chief Pilot" for "Allegiant Air," not "Allegiant Travel").  Accordingly, Allegiant Travel should be dismissed.

## III.    CONCLUSION

Based on the foregoing argument, Plaintiff's Complaint should be dismissed with prejudice.

Dated: January 19, 2016.

JACKSON LEWIS P.C.

_____/s/ Steven C. Anderson_____
Veronica Arechederra Hall, Bar No. 5855
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 19th day of January, 2016, I caused to be served via the Court's CM/ECF Filing, a true and correct copy of the above foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** properly addressed to the following:

Michael A. Urban
Sean W. McDonald
THE URBAN LAW FIRM
4270 S. Decatur Blvd., Ste. A-9
Las Vegas, Nevada 89103

*Attorneys for Plaintiff*

                                              /s/ Emily Santiago
                               Employee of Jackson Lewis P.C.

Jackson Lewis P.C.
Las Vegas

19