**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Jason Kinzer

          Plaintiff(s),

    vs.

Allegiant Air, LLC, Allegiant Travel Co.,

        Defendant(s).

Case #15-CV-02306-JAD-PAL

**VERIFIED PETITION FOR**
**PERMISSION TO PRACTICE**
**IN THIS CASE ONLY BY**
**ATTORNEY NOT ADMITTED**
**TO THE BAR OF THIS COURT**
**AND DESIGNATION OF**
**LOCAL COUNSEL**

FILING FEE IS $250.00

    Joseph Lafayette Anderson , Petitioner, respectfully represents to the Court:
         (name of petitioner)

1.    That Petitioner is an attorney at law and a member of the law firm of

                  Pangia Law Group
                    (firm name)

with offices at          1717 N Street NW ,
                   (street address)

   Washington ,    District of Columbia ,   20036 ,
    (city)                (state)       (zip code)

    (202) 955-6450 ,   janderson@pangialawfirm.com .
 (area code + telephone number)     (Email address)

2.    That Petitioner has been retained personally or as a member of the law firm by

        Jason Kinzer        to provide legal representation in connection with
        [client(s)]

the above-entitled case now pending before this Court.

Rev. 1/15

3.      That since _____3/1993_____, Petitioner has been and presently is a
                                    (date)
member in good standing of the bar of the highest Court of the State of _____North Carolina_____
                                                                              (state)
where Petitioner regularly practices law. Petitioner shall attach a certificate from the state bar or
from the clerk of the supreme court or highest admitting court of each state, territory, or insular
possession of the United States in which the applicant has been admitted to practice law certifying
the applicant's membership therein is in good standing.

4.      That Petitioner was admitted to practice before the following United States District
Courts, United States Circuit Courts of Appeal, the Supreme Court of the United States and Courts
of other States on the dates indicated for each, and that Petitioner is presently a member in good
standing of the bars of said Courts.

| Court | Date Admitted | Bar Number |
|-------|---------------|------------|
| See Exhibit A attached hereto | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

5.      That there are or have been no disciplinary proceedings instituted against petitioner,
nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory
or administrative body, or any resignation or termination in order to avoid disciplinary or
disbarment proceedings, except as described in detail below:

Yes. See Exhibit B attached hereto.

2

Rev. 1/15

6.    That Petitioner has never been denied admission to the State Bar of Nevada.  (Give particulars if ever denied admission):

None

7.    That Petitioner is a member of good standing in the following Bar Associations.

North Carolina Bar Association, California Bar Association, West Virginia Bar Association, Kentucky Bar Association, District of Columbia Bar Association,  Lawyer-Pilots Bar Association, Forsyth County Bar Association

8.    Petitioner has filed application(s) to appear as counsel under Local Rule IA 10-2 during the past three (3) years in the following matters:  (State "none" if no applications.)

| Date of Application | Cause | Title of Court Administrative Body or Arbitrator | Was Application Granted or Denied |
|---|---|---|---|
| None | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(If necessary, please attach a statement of additional applications)

9.    Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada.

10.    Petitioner agrees to comply with the standards of professional conduct required of the  members of the bar of this court.

11.    Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

3

Rev. 1/15

That Petitioner respectfully prays that Petitioner be admitted to practice before this Court FOR THE PURPOSES OF THIS CASE ONLY.

_____
Petitioner's signature

STATE OF _No rTh  C ArOliaa_ )
COUNTY OF _ForSYTh_ )

_Joseph ANAesoN_ Petitioner, being first duly sworn, deposes and says:

That the foregoing statements are true.

_____
Petitioner's signature

Subscribed and sworn to before me this

_6th_ day of _April_ _2016_

_____
Notary Public or Clerk of Court

## DESIGNATION OF RESIDENT ATTORNEY ADMITTED TO THE BAR OF THIS COURT AND CONSENT THERETO.

Pursuant to the requirements of the Local Rules of Practice for this Court, the Petitioner believes it to be in the best interests of the client(s) to designate _Sean W. McDonald_ , 

(name of local counsel)

Attorney at Law, member of the State of Nevada and previously admitted to practice before the above-entitled Court as associate resident counsel in this action.  The address and email address of said designated Nevada counsel is:

_4270 S. Decatur Blvd. Suite A-9_ ,
(street address)

| _Las Vegas_ , | _Nevada_ , | _89103_ , |
|---|---|---|
| (city) | (state) | (zip code) |

| _702-968-8087_ , | _smcdonald@theurbanlawfirm.com_ . |
|---|---|
| (area code + telephone number) | (Email address) |

4

Rev. 1/15

By this designation the petitioner and undersigned party(ies) agree that this designation constitutes agreement and authorization for the designated resident admitted counsel to sign stipulations binding on all of us.

### APPOINTMENT OF DESIGNATED RESIDENT NEVADA COUNSEL

The undersigned party(ies) appoint(s) _____ Sean W. McDonald _____ as
(name of local counsel)

his/her/their Designated Resident Nevada Counsel in this case.

_____
(party's signature)

Jason Kinzer, Plaintiff
(type or print party name, title)

_____
(party's signature)

_____
(type or print party name, title)

### CONSENT OF DESIGNEE

The undersigned hereby consents to serve as associate resident Nevada counsel in this case.

_____
Designated Resident Nevada Counsel's signature

12817                            smcdonald@theurbanlawfirm.com
Bar number                       Email address

APPROVED:

Dated:  April 29, 2016.

_____
UNITED STATES DISTRICT JUDGE

5

Rev. 1/15

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Christie S. Cameron Roeder, Clerk of the Supreme Court of North Carolina, do hereby certify that on March 20, 1993, license to practice as an Attorney and Counselor at Law in all the Courts of this State was issued by the North Carolina Board of Law Examiners to

## JOSEPH L. ANDERSON

according to the certified list of licentiates reported by the Secretary of said Board and filed in my office as required by statute.

To the date of this certificate, no order revoking said license has been filed with this Court and no order suspending same is in effect.

WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in Raleigh, this February 19, 2016.

Christie S Cameron Roeder

Christie S. Cameron Roeder
Clerk of the Supreme Court
of the State of North Carolina

*STATE OF WEST VIRGINIA*

      *I, Rory L. Perry II, Clerk of the Supreme Court of Appeals of West Virginia, hereby do certify that Joseph L. Anderson, of Winston-Salem, North Carolina, an attorney duly licensed to practice law in this State, was admitted to practice law before the Supreme Court of Appeals of West Virginia, the highest court of the State, on the 21st day of May, 2002; that he is an attorney in good standing in said Court and is currently on inactive status and that his private and professional characters are good.*

      *Given under my hand and seal of said Court, at Charleston, West Virginia, this 8th day of April, 2016, and in the 153rd year of the State.*

*Clerk, Supreme Court of Appeals of West Virginia*





**District of Columbia Court of Appeals**
Committee on Admissions
430 E Street, N.W. — Room 123
Washington, D. C. 20001
202 / 879-2710

I, *JULIO A. CASTILLO*, Clerk of the District of Columbia Court of Appeals, do hereby certify that

## JOSEPH L. ANDERSON

was on   **MARCH 9, 2001**   duly qualified and admitted as an attorney and counselor. This attorney is, on the date indicated below, voluntarily registered as an inactive member in good standing of the District of Columbia Bar and, therefore, is not currently eligible to practice law in the District of Columbia.

In Testimony Whereof, I have hereunto subscribed my name and affixed the seal of this Court at the City of Washington, D.C, on **April 8, 2016**

JULIO A. CASTILLO
Clerk of the Court

By: _____
Deputy Clerk



**THE STATE BAR**
**OF CALIFORNIA**

MEMBER RECORDS & COMPLIANCE

180 HOWARD STREET, SAN FRANCISCO, CALIFORNIA 94105-1617

TELEPHONE: 888-800-3400

# CERTIFICATE OF STANDING

April 6, 2016

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, JOSEPH LAFAYETTE ANDERSON, #143275 was admitted to the practice of law in this state by the Supreme Court of California on December 11, 1989; that from the date of admission to January 30, 2007, he was an ACTIVE member of the State Bar of California; that on January 30, 2007, he transferred at his request to the INACTIVE status; that he has been since that date, and is at date hereof, an INACTIVE member of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

*Louise Turner*

Louise Turner
Custodian of Membership Records

NOTE:  *Only ACTIVE members of the State Bar of California are entitled to practice law in California.  (See Sections 6006 and 6125, et seq., Business and Professions Code.)*

# KENTUCKY BAR ASSOCIATION
## 514 WEST MAIN STREET
## FRANKFORT, KENTUCKY 40601-1812
## (502) 564-3795
## FAX (502) 564-3225
## www.kybar.org

**OFFICERS**
Douglass Farnsley
**President**

R. Michael Sullivan
**President-Elect**

William R. Garmer
**Vice President**

William E. Johnson
**Immediate Past President**

**YOUNG LAWYERS**
J. Tanner Watkins
**Chair**

**EXECUTIVE DIRECTOR**
John D. Meyers

**BOARD OF GOVERNORS**
Mindy G. Barfield
Amy D. Cubbage
Melinda G. Dalton
Thomas N. Kerrick
Howard Oliver Mann
Earl M. McGuire
J. D. Meyer
Eileen M. O'Brien
Michael M. Pitman
W. Fletcher Schrock
Gary J. Sergent
Bobby Simpson
J. Stephen Smith
John Vincent



April 13, 2016

Joseph L. Anderson
1717 N Street Northwest
Washington, DC  20036

RE:  Verification of Status of Kentucky Bar Association

Dear Mr. Anderson:

     We acknowledge your request for verification on your status with the Kentucky Bar Association. Our records indicate that you were admitted to the Kentucky Bar Association by motion on July 16, 2001 and that you voluntarily withdrew on November 9, 2009.   A detailed disciplinary report is enclosed.

     If I may be of further assistance, please do not hesitate to call.

     Sincerely,

     Michele M. Pogrotsky
     Deputy Registrar

Enclosure (1)

# DETAILED DISCIPLINARY REPORT

**Respondent:  JOSEPH LAFAYETTE ANDERSON**
**KBA Membership Number:  88810**
**Date:  April 13, 2016**

**NAME AND ADDRESS OF COMPLAINANT:  Inquiry Commission**

**NATURE OF COMPLAINT:  Violations of SCR 3.130(5.3); SCR 3.130(7.09)(3);**
**SCR 3.130(7.09)(4) and SCR 3.130(7.15)**

**DATE FILED:  September 15, 2006**

**DATE APPLICANT SERVED:  January 18, 2008**

**DISPOSITION:  Public Reprimand with Conditions 9/18/2008**


_____
Michele M. Pogrotsky, Deputy Registrar

EXHIBIT A

## JOSEPH L. ANDERSON BAR ADMISSIONS

*Federal*

United States Supreme Court April 2014
United States Court of Appeals for the Federal Circuit August 1991
Ninth Circuit Court of Appeals February 1992
Fourth Circuit Court of Appeals April 1998
Southern District West Virginia May 2002
Northern District of California October 1991
Central District of California December 1990
Eastern District of North Carolina May 1998
Western District of North Carolina August 1997
Middle District of North Carolina June 1993


*State Courts*

California September 1989
North Carolina May 1993
District of Columbia Court of Appeals April 2001
West Virginia May 2002
Kentucky July 2001 (inactive)

# EXHIBIT B

JOSEPH L. ANDERSON

Dear United States Supreme Court:

There has been a disciplinary matter against me.  Please allow this to stand as my explanation of the matter.

My firm handles aviation disasters nationwide and has done so for about ten years.  We have represented the surviving families of aircrash disaster victims, principally.

Back in 2006 a flight crashed in Kentucky.  I was then licensed in Kentucky, among other places.  Following the crash I put up a website offering grief counseling services to victims of the crash.  These were to be furnished by other aircrash victims' family members.  The site also offered legal advice *if* requested.  The website was received as an advertisement, and the Kentucky Bar asked me to submit the site to them for review.  I immediately did so and also took the further, unrequested step of immediately taking the site down in its entirety once I realized it was not appreciated.

Sometime during the few days that the site was up, and without my knowledge or consent, my former paralegal sent a note to a co-worker of one of the victims directing her to the accident-related website.  This was viewed as a solicitation, and mortified me.

The matter was resolved without suspension and by a reprimand to which I consented.

I am attaching copies of the relevant affidavit and the opinion accepting our negotiated resolution.

Sincerely,

Joseph L. Anderson

## AFFIDAVIT OF COURTNEY SOUTHERN

I, Courtney Southern having been duly sworn, do hereby depose and state as follows:

1.  As of the date I make this affidavit, I am more than 18 years of age and am not under the influence of any undue coercion or duress.  I make this affidavit freely, and because it is the truth.

2.  I am employed as a paralegal for Anderson, Weber & Henry, P.C. in Kernersville, North Carolina.

3.  On or about August 31, 2006, I sent a message through the website www.myspace.com to a profile named "SoooBootylicious." This profile stated to the public that the person who owned the profile worked at GALLS with a few of the individuals who died in the Comair 5191 airline disaster.

4.  Through this profile, I saw that this individual was communicating through a message board for GALLS employees (which was also on Myspace) and was inviting others to share memories of their lost co-workers.

5.  I sent an e-mail message directly to the owner of this profile to make her aware of the www.Comair5191families.com, a website that Anderson Weber & Henry, P.C. had recently sponsored. In my email, I invited her to share the website with others who might be interested in connecting with people who shared a similar loss or to post remembrances of their family members, friends or co-workers.  A copy of my message, as posted by the owner of this profile, is attached as Exhibit A.

6.      I was not asked to send this e-mail by anyone at our law firm or anyone outside of
our office.  The attorneys at Anderson Weber & Henry were unaware of my e-
mail to this person.  I personally made the decision to share the website and its
intended purpose with others.

7.      On August 31, 2006, the owner of the profile "SoooBootylicious" posted the entire
content of my e-mail to the message board for GALLS employees with a note
stating, "Someone sent this to me and I thought others may benefit from it." A copy
of this message is attached in Exhibit A.  At the same time, the owner of this
profile also sent a message to my personal Myspace profile requesting that I add her
as a "friend" on my profile, which I did.

8.       On September 5, 2006, I received a telephone call from Joseph Anderson, a partner
with our firm. He alerted me to the fact that the website
www.Comair5191families.com, was being reviewed by the Kentucky State Bar
advertising division for compliance with Kentucky Bar regulations and that an e-
mail I had sent was also under review.  I explained the process of the email to him at
this time (as described above).  Mr. Anderson informed me that the website was
being taken down immediately at his request and he instructed me to contact the
owner of "SoooBootylicious" and ask her to remove the copy of my e-mail she had
posted on her profile. He explained that these measures were being taken to ensure
complete and immediate compliance with the Kentucky State Bar and to avoid any
confusion with regard to the website's intended purpose.

9.      Following my conversation with Mr. Anderson, I immediately sent the attached
message through Myspace to the owner of the profile "SoooBootylicious." I

2

apologized for any problems that my request to forward information about the Comair website might have caused and asked her to please remove the posting to prevent any further misunderstanding. A copy of this correspondence is attached as Exhibit B.

10.    The next morning, I received two replies to my request from "SoooBootylicious." Copies of these messages are attached as Exhibits C and D. One of her messages requested that I provide her with information on how to remove her post containing my e-mail. I responded immediately with my suggestions and offered to help her take down the post should she need it. I also apologized again for any problems I may have caused. A copy of this correspondence is attached as Exhibit E.

11.    At the time I make this affidavit, the original posting containing my e-mail remains on the GALLS employees' message board despite my request to remove it.

12.    I have been counseled by the attorneys at our law firm to refrain from any communication in the future that is in any way related to our practice without the prior approval of the partners.

12.    I sincerely regret any breach of ethics or rules of the Kentucky State Bar that my communication may have caused. My only intention was to pass along information about the Comair website in an effort to help someone who might be affected by this tragedy. I have been very upset and worried about how my actions might have been misinterpreted and the resulting effects this could have my reputation as a legal professional and the reputation and good standing of our firm. I also regret any hurt or pain it may have caused those who have lost loved ones in the Comair Flight 5191 tragedy.

3

FURTHER, DEPONENT SAYETH NOT.

_Courtney M. Southern_
Courtney M. Southern

SWORN TO BEFORE ME

this 22nd day of September, 2006.

Notary Public for North Carolina
My Commission Expires: 4/8/2007
GINA K. MOTSINGER

NOTARY PUBLIC
GINA K. MOTSINGER
FORSYTH COUNTY, NC
My Commission Expires

4

A

Instant Message
Send Message

| quote | reply | Posted: Aug 31, 2006 7:18 PM

Someone sent this to me and I thought others may benefit from it.

SoooBootylicious



-------------------------------------------------------------------------------

My name is Courtney and I work for a firm in Kernersville, NC. As a result of the recent tragedy in Lexington, KY we have developed and donated a website for support and grief counseling to the families of the victims of that flight.

If you are in contact with any of the family members touched by this event, please send them to www.comair5191families.com. There are names of grief counselors available to speak with these folks, several of them being family members of other victims of aviation disasters, also a message board for the families and freinds to communicate, or for people to post memorials and rememberances.

F/29
NICHOLASVILLE,
KENTUCKY
Instant Message
Send Message

We wanted to try make it as easy as possible for everyone involved.

Thank you and repost if you see fit.

Listing 1-4 of 4                          1  of  1

| Post a Reply |

TO BE PUBLISHED

# Supreme Court of Kentucky

2008-SC-000546-KB

JOSEPH L. ANDERSON                                              MOVANT

V.                            IN SUPREME COURT

KENTUCKY BAR ASSOCIATION                                    RESPONDENT

## OPINION AND ORDER

Movant, Joseph L. Anderson, pursuant to SCR 3.480(2), moves this Court to

enter an Order resolving the pending disciplinary proceeding against him (KBA File No.

14601) by imposing a Public Reprimand and suspending his license to practice law in

the Commonwealth of Kentucky for 30 days, probated upon the condition that Movant

issue various apologies, comply with the rules on lawyer advertising, and not receive

any further disciplinary charges for one year.  The Kentucky Bar Association (KBA)

states that it has no objection to the motion.

## I. Background

Movant was admitted to the practice of law in the Commonwealth of Kentucky on

July 16, 2001; his KBA member number is 88810.  Movant's bar roster address is 2615

Sparkling Place, Winston-Salem, North Carolina 27103.  He has not previously been

disciplined in the Commonwealth of Kentucky.

On August 27, 2006, Comair Flight 5191 crashed in Lexington, Kentucky.  On

August 28, 2006, the Movant, a licensed Kentucky attorney whose office is in North

Carolina, where he is also licensed to practice law, contacted Lynne Koenigsknecht,

owner of Radiant Designs, a website design company.  The Movant personally

instructed her to design and publish a website: www.comair5191families.com ("Comair website").

On August 30, 2006, the Comair website was published online, making it available to the general public. The website stated that it offered counseling services to friends and family members of the crash victims. In fact, while it did offer counseling services, the website was also an advertisement for Anderson, Weber & Henry, P.L.L.C., the Movant's law firm.[1] The website included two references on the left hand side to "Anderson, Weber & Henry PC" (presumably these were links to the firm's website); the statement, "This website donated by Michael J. Pangia and the law offices of Anderson, Weber, and Henry – advocates for victims." at the bottom right of the page; and the text "Legal Advertisement FOR LEGAL ASSISTANCE CALL TOLL-FREE" followed by an 800-number centered at the bottom of the page. The site also included a link labeled "Site Disclaimer," which led to a page with the following text:

> We strive to provide the highest quality legal representation in all cases undertaken by the firm, and our goal is the most complete recovery possible. However, we cannot guarantee results. Anderson Weber & Henry, P.C. provides this website for general informational purposes only, and these materials are not intended to constitute and cannot constitute legal advice or promises of results in a particular case. Persons wishing to take legal action or obtain legal advice should seek legal counsel, and should not rely on any inferences drawn from this site. The materials may be considered advertising in your state, but are intended as informational.

The text was followed by the name of Movant's firm and the firm's physical address, telephone and facsimile numbers and website address. On September 1, 2006, the Movant's firm began advertising the website through Google.com.

---

[1] Anderson, Weber & Henry, P.L.L.C. is no longer in existence. The Movant formed a new firm, Anderson Pangia & Associates, P.L.L.C., in mid-2007.

On August 31, 2006, Courtney Southern, a paralegal employed by Anderson, Weber & Henry, P.L.L.C., sent an email to an employee of Galls, Inc., directing the employee to the Comair website. Three employees of Galls, Inc., a company based in Lexington, Kentucky, died in the crash of Flight 5191. The employee who was contacted by Ms. Southern forwarded the email to other Galls, Inc. employees. One employee accessed the Comair website and discovered that by clicking on the text "legal assistance," the site immediately changed to the firm website of Anderson, Weber & Henry, P.L.L.C. On September 5, 2006, the website was removed from public access.

On September 6, 2006, the Attorney's Advertising Commission (AAC) sent a letter to the Movant's firm notifying it that both the Comair website and the firm's website had not been submitted for review as advertisements. The submission of the advertisement, pursuant to SCR 3.130-7.02, should have occurred either before publication or simultaneous to the publication.

Before receiving the letter from the AAC, but after being contacted by a reporter regarding the angry reaction to the advertisement in Lexington, Kentucky, the Movant called the AAC to discuss the advertisement. On September 25, 2006, the Movant submitted both of the websites to the AAC for review.

The AAC forwarded the advertisements to the Mass Disaster Task Force, which had been formed pursuant to SCR 3.130-7.60 following the Comair crash. The Task Force reviewed the advertisements and found them to be non-compliant. The Task Force further found that the websites were misleading and, when coupled with the actions of the Movant's paralegal, were in violation of the rules prohibiting solicitation in the immediate aftermath of a mass disaster. The Task Force then referred the Movant

3

to the Inquiry Commission for a determination of what, if any, further action was appropriate.

The Inquiry Commission issued a four-count Charge against the Respondent on April 17, 2008.  Count I of the Charge alleges that the Movant's conduct, as described above, violated SCR 3.130-5.3 when he failed to properly supervise his paralegal, Courtney Southern, leading to her attempt to solicit clients in a way that did not comply with the Movant's professional obligations. Count II of the Charge alleges that the Movant violated SCR 3.130-7.09(3) when his paralegal contacted an employee of Galls, Inc. via email and directed the employee to the Comair website, and the email to the Galls, Inc. employee did not contain the words "THIS IS AN ADVERTISEMENT" as expressly required.  Count III of the Charge alleges that the Movant violated SCR 3.130-7.09(4), which sets a thirty day no contact period following a mass disaster such as an airplane crash, when his paralegal initiated direct communication with an employee of Galls, Inc., via email.  Count IV of the Charge alleges that the Movant violated SCR 3.130-7.15 when he directed the creation of the Comair website, which was false, deceptive, and misleading as it appeared to be a grief counseling website established to aid and support friends and families of those who died in the disaster, but was in fact an advertisement for his firm.

In his answer to the Charge, Movant admitted that his conduct violated the ethical rules, that he was responsible for the acts of his employees and associates, and demonstrated remorse.

## II. Analysis

In his current motion, Movant admits that his conduct as described in the Charge and as recounted above violated the requirements of SCR 3.130-5.3, SCR 3.130-

7.09(3), SCR 3.130-7.09(4), and SCR 3.130-7.15. He also agrees to the imposition of discipline and requests a public reprimand with certain conditions and a probated 30-day suspension. The negotiated sanction rule provides that the KBA may "object[] to the terms proposed. . . ." SCR 3.480(2). Upon receiving such objection, "if the Court determines good cause exists, [it] shall remand the case for hearing or other proceedings specified in the order of remand." Id. However, the KBA has stated that it has no objection to the sanction proposed by Movant. Nevertheless, acceptance of the proposed negotiated sanction still falls within the discretion of the Court: "The Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand." Id.

In support of the negotiated sanction, the KBA cites two cases where the misconduct was followed by a public reprimand. See Howes v. Kentucky Bar Association, 214 S.W.3d 319 (Ky. 2007) (imposing a public reprimand for sending letters to the treating physicians of the attorney's clients that stated that he somehow represented them in the recovery of their fee and they could either pay him 25% or agree that he represent them to recover the fee when the physicians were not his clients nor had they sought his advice or assistance); Croley v. Kentucky Bar Association, 176 S.W.3d 136 (Ky. 2005) (imposing public reprimand for failure to timely file a lawsuit followed by offer to settle the professional negligence suit filed by his former clients, knowing they were not represented). The KBA also cites two cases where the misconduct led to a suspension. See Martin v. Kentucky Bar Association, 214 S.W.3d 322 (Ky. 2007) (imposing 30 day suspension when attorney went to two hospitals following car accidents and solicited the victims); Gregory v. Kentucky Bar Association, 151 S.W.3d 31 (Ky. 2004) (imposing 30 day suspension for failing to

ensure legal assistant/secretary's conduct was consistent with attorney's professional obligations as a lawyer, which resulted in the commingling of client funds with those of attorney).

In support of its argument that a reprimand is the appropriate sanction, the KBA notes that the American Bar Association has stated, with regard to improper solicitation of clients, "Suspension is generally appropriate when a lawyer knowingly engaged in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." American Bar Association, Standards for Imposing Lawyer Sanctions §7.2 (1992). The Commentary to this section of the ABA's Standards indicates that suspension could be an appropriate sanction in this case: "A suspension is also appropriate when a lawyer solicits employment knowing that the individual is in a vulnerable state." Id. §7.2 cmt. The KBA notes, however, that the ABA's Standards calls for certain factors to be considered in mitigation, which the KBA argues indicates that a reprimand is the most appropriate sanction for Movant. Specifically, the KBA cites the following mitigating factors: "(a) absence of a prior disciplinary record; . . . (e) full and free disclosure to the disciplinary board or cooperative attitude toward proceedings; . . .(l) remorse . . . ." Id. § 9.32.

The KBA notes in its Response, "As [Movant]'s Answer to the Charge indicates, he takes full responsibility for his actions and regrets what occurred." The KBA further cites a portion of the ABA's Standards that it argues explains the purpose of a reprimand and further indicates that it is the most appropriate sanction in this case: "Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." Id. §7.3; see also id. § 7.3 cmt. ("Reprimand is

6

the most appropriate sanction in most cases of a violation of a duty owed to the profession.  Usually there is little or no injury to a client, the public, or the legal system, and the purposes of lawyer discipline will be best served by imposing a public sanction that helps educate the respondent lawyer and deter future violations.  A public sanction also informs both the public and other members of the profession that this behavior is improper.").

While the ABA's <u>Standards</u> are not binding authority on this Court by any means, they can at times serve as persuasive authority.  After reviewing the standards and the other authorities cited by the KBA, this Court concludes that the discipline proposed by Movant is largely adequate.

In one respect, however, the Court finds that good cause exists to depart from the agreement.  Specifically, the Court finds that the agreed upon size of the apology letter to be published in the newspaper is inadequate.  Therefore, the Court does not accept the agreed-upon discipline in its entirety.

### Order

ACCORDINGLY, IT IS ORDERED THAT:

1. Movant, Joseph L. Anderson, is publicly reprimanded for the above-described and admitted violations of the Rules of Professional Conduct and is further suspended from the practice of law in the Commonwealth of Kentucky for 30 days, with said suspension probated on the following conditions:

a.  Movant will publish in the Lexington Herald-Leader a letter of apology in substantially the same form as the sample language included as an exhibit to the KBA's response to his motion, with any corrections needed to reflect the facts (including the name of the website in question).  The letter as published in the

Lexington Herald-Leader must be at least one-eighth of a page in size, and must be published within 30 days of the entry of this Order.

b. Movant will send a letter of apology, also in substantially the same form as the sample language included as an exhibit to the KBA's response to his motion, to Galls, Inc. within 30 days of entry of this Order.

c. Movant will submit all advertisements targeted at Kentucky residents, including his firm's website, to the Attorneys' Advertising Commission at least 30 days prior to the publication of the advertisements for a period of one year from the date of entry of this Order.

d. Movant will not receive any further Charges for a period of one year from the date of entry of this Order.

2. In the event that the Movant fails to comply with any of the terms of discipline set forth herein, upon motion by the KBA Office of Bar Counsel, the Court may revoke the probation and impose the 30-day suspension from the practice of law.

3. In accordance with SCR 3.450, Movant is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $95.21, for which execution may issue from this Court upon finality of this Opinion and Order.

4. If Movant is not willing to accept the sanction imposed by this Order, insofar as it differs from that requested by Movant, he may object to it. If Movant so objects, this matter shall ber remanded for further disciplinary proceedings pursuant to SCR 3.480(2).

All sitting. All concur.

ENTERED: September 18, 2008.

CHIEF JUSTICE

8



**THE STATE BAR
OF CALIFORNIA**

OFFICE OF THE CHIEF TRIAL COUNSEL
ENFORCEMENT

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1318

DIRECT DIAL: (213) 765-1223

January 8, 2008

**PERSONAL AND CONFIDENTIAL**

Joseph L. Anderson
P.O. Box 4405
Greensboro, NC 27404

Re:   Case Number:        07-O-13655
      Complainant:        State Bar Investigation

<u>**Warning Letter**</u>

Dear Mr. Anderson:

This letter is directed to you based on my understanding that you are not represented by counsel in this matter.  If I am incorrect in this regard, please arrange to have me advised of the name of your attorney so that any future communications can be directed to your counsel.

The State Bar of California has completed its investigation of the allegations raised by the above-referenced complaint.  As part of our investigation you were contacted and given an opportunity to provide an explanation for your conduct as related to the complaint.  Based upon a review of the findings, we conclude that there was substantial evidence of a violation of Rules of Professional Conduct, rule 1-400(D).  However, in the exercise of our discretion, we have decided to close this complaint with the issuance of this warning letter and will take no disciplinary action against you at this time.

Our decision to issue the warning letter is based upon the following facts:  Following the crash of Comair Flight 5191 on August 27, 2006, your law firm created and placed a grief counseling website on the internet purportedly to aid the friends and family of the Comair victims.  A link on that website directed viewers to your law firm's site.  The grief counseling website did not indicate that it was a legal advertisement for your firm and therefore it was misleading to the public.

Please be advised of the following:

- This letter is issued pursuant to Rule 2601 of the Rules of Procedure of the State Bar of California and does ***not*** constitute the imposition of discipline.  Only the California Supreme Court or, in limited instances, the State Bar Court, can impose discipline.

- It is the intention of the Office of the Chief Trial Counsel that this letter not be considered as evidence of professional misconduct in any future proceeding, court

Joseph L. Anderson
January 8, 2008
Page 2

hearing, or application for employment.
- Our determination to close this matter is without prejudice and conditional.  We may reopen this matter if we discover new material evidence, or if the Chief Trial Counsel's designee, in his or her discretion, otherwise determines there is good cause to do so.

You may ask that our decision to close this complaint without the imposition of discipline be reviewed by an attorney designated by the Chief Trial Counsel.  If you wish to do so, your request must be in writing, addressed to the individual signing below, and postmarked *within 30 days of the date of this letter.*  Review may result in:  (1)  rescission of the warning letter and dismissal of the complaint; (2) reopening of the matter and referral for formal disciplinary prosecution before the State Bar Court; or (3) a determination that the warning letter was appropriately issued, in which case no further action will be taken.

Very truly yours,

Lee Ann Kern
Deputy Trial Counsel

RM

STATE OF WEST VIRGINIA
# OFFICE OF DISCIPLINARY COUNSEL
2008 KANAWHA BOULEVARD, East
CHARLESTON, WEST VIRGINIA 25311
office: (304) 558-7999
fax: (304) 558-4015

Chief Lawyer Disciplinary Counsel
  Lawrence J. Lewis
Lawyer Disciplinary Counsel
  Rachael L. Fletcher Cipoletti
  Andrea J. Hinerman
  Charles A. Jones, III

September 6, 2007

Melissa Sternbach
Membership Director of the National Board of Trial Advocacy
200 Stonewall Boulevard, Suite 1
Mail Box 11
Wrentham, Massachusetts   02093

**Re:**   *Letter of Good Standing and Ethics Information for Joseph L. Anderson, Esquire*

Dear Ms. Sternbach:

Pursuant to your request for files at The West Virginia State Bar, as of the date of this letter, contains the following information:

1.    He was admitted to The West Virginia State Bar on May 21, 2002; and
2.    He is currently in good standing with a Reciprocity status with The West Virginia State Bar and, as such, is licensed to practice law in the State of West Virginia.

With respect to any ethics complaints having been filed, our records, which date back to December, 1984, are as follows:

1.    He has had no complaints filed with our Office.

Should you need any further information, please contact us.

Sincerely yours,

Evelyn Stover
Office Assistant

/es

Taken, subscribed and sworn before me this 6th day of September, 2007. My Commission expires 9-21-2016.

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
KATHLEEN W. McKINNEY
OFFICE OF DISCIPLINARY COUNSEL
2008 KANAWHA BOULEVARD, EAST
CHARLESTON, WV 25311
My commission expires September 21, 2016

NORTH CAROLINA

WAKE COUNTY

BEFORE THE
GRIEVANCE COMMITTEE
OF THE
NORTH CAROLINA STATE BAR
07G1128

IN RE:   Joseph L. Anderson,    )
           ATTORNEY AT LAW      )
                            )

ADMONITION

On January 24, 2008, the Grievance Committee of The North Carolina State Bar met and considered the grievance filed against you by the North Carolina State Bar.

Pursuant to section .0113(a) of the Discipline and Disability Rules of the North Carolina State Bar, the Grievance Committee conducted a preliminary hearing. After considering the information available to it, including your response to the letter of notice, the Grievance Committee found probable cause. Probable cause is defined in the rules as "reasonable cause to believe that a member of the North Carolina State Bar is guilty of misconduct justifying disciplinary action."

The rules provide that after a finding of probable cause, the Grievance Committee may determine that the filing of a complaint and a hearing before the Disciplinary Hearing Commission are not warranted and the Grievance Committee may issue various levels of discipline depending upon the misconduct, the actual or potential injury caused, and any aggravating or mitigating factors. The Grievance Committee may issue an admonition, a reprimand, or a censure.

An admonition, which is the least serious form of discipline authorized, is imposed in cases in which an attorney has committed a minor violation of the Rules of Professional Conduct.

Your website indicated that your firm was a "plaintiff's trial practice specializing in cases involving nursing home abuse and neglect, aviation disasters, toxic torch, medical malpractice and abuse and neglect of persons with disabilities." In another link on your website, you indicated that your firm specialized "in matters involving abuse and neglect of individuals living in residential facilities such as ICF/MRs, group homes and long-term nursing facilities..." Your reference to specializing in certain legal matters was in violation of Rule 7.4(b) of the Revised Rules of Professional Conduct.

You are hereby admonished by the North Carolina State Bar for your professional misconduct.

In accordance with the policy adopted October 15, 1981 by the Council of the North Carolina State Bar regarding the taxing of the administrative and investigative costs to any attorney issued an admonition by the Grievance Committee, the costs of this action in the amount of $100.00 are hereby taxed to you.

Done and ordered, this the 3rd day of March, 2008.

James R. Fox, Chair
Grievance Committee

JRF/lr